**Gaile K. OWENS and Pervis T. Payne, Appellants/Appellees,**

v.

**STATE of Tennessee, Appellee/Appellant.**

Supreme Court of Tennessee, at Jackson.

Oct. 23, 1995.

Ronald Lee Gilman, Rebecca Pearson Tuttle, Steven C. Brammer, Farris, Hancock, Gilman, Brannan & Hellen, Memphis, for Owens.

J. Brooke Lathram, Willam Lester Jones, R. Porter Field, Burch, Porter & Johnson, Memphis, for Payne.

Charles W. Burson, Attorney General & Reporter, Nashville, Amy L. Tarkington, Assistant Attorney General, Nashville, James J. Challen, III, Thomas D. Henderson, Assistant District Attorneys, Memphis, for Appellee/Appellant.

John E. Herbison, Rebecca Freeman, Nashville, for amicus curiae, Tennessee Association of Criminal Defense Lawyers.

## OPINION

ANDERSON, Chief Justice.

 We granted this consolidated appeal in order to determine whether the rules, statutes, or constitution of this state, authorize a trial court in a post-conviction capital case to provide expert services if necessary to ensure the constitutional rights of an indigent petitioner. We have determined that this issue is best resolved by an interpretation of the applicable statutes and specifically whether Tenn.Code Ann. § 40–14–207(b) (1990 & 1995 Supp.), (which authorizes expert services if necessary for the protection of the constitutional rights of an indigent defendant), applies to post-conviction capital cases, and whether and under what circumstances an indigent petitioner in a capital post-conviction case is entitled to an *ex parte* hearing to determine the necessity of such services. We conclude that the statute applies in post-conviction capital cases, and that when certain procedural criteria are satisfied, an indigent petitioner in a post-conviction capital case is entitled to an *ex parte* hearing on a motion for expert or investigative services. Accordingly, we reverse, in part, the Court of Criminal Appeals' judgment and remand to the respective trial courts for further proceedings consistent with this opinion.

## *BACKGROUND*

Appellant Gaile K. Owens was originally tried with co-defendant Sidney Porterfield in January of 1986. Owens was convicted of one count of accessory before the fact to first-degree murder and sentenced to death. This Court affirmed her conviction and sentence,[1] and the United States Supreme Court

---

1. *State v. Porterfield,* 746 S.W.2d 441 (Tenn. 1988).

denied certiorari review.[2]

In 1988, Appellant Pervis Tyrone Payne was tried and convicted of two counts of first-degree murder and one count of assault with intent to commit first-degree murder. Payne was sentenced to death on each conviction for first-degree murder, and received a thirty year sentence on the conviction for assault with intent to commit first-degree murder. This Court affirmed his convictions and sentences.[3] The United States Supreme Court granted certiorari review as to one sentencing issue, but affirmed the judgment of this Court.[4]

Thereafter, Owens and Payne each filed petitions for post-conviction relief. In the course of their separate proceedings, each also moved the trial court for funds for investigative and expert services and requested an *ex parte* hearing on the motion.

In each proceeding the trial court denied the motion, relying on *Teague v. State*, 772 S.W.2d 915 (Tenn.Crim.App.1988), *perm. app. denied* (Tenn.1989). In that case, the Court of Criminal Appeals said in dicta that neither Tenn.Code Ann. § 40–14–207(b), authorizing trial courts to hold *ex parte* hearings on motions requesting funds for investigative and expert services, nor Tennessee Supreme Court Rule 13, empowering trial courts to approve such funds if necessary to protect constitutional rights, apply to post-conviction capital cases. However, the trial court in each case granted Owens and Payne permission to seek an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9.

The Court of Criminal Appeals granted an interlocutory appeal in each case, and consolidated the cases for hearing and decision. The Court of Criminal Appeals' unanimously affirmed the trial court's denial of the request for an *ex parte* hearing, concluding that absent statutory authorization or Supreme Court rule, *ex parte* hearings are not appropriate. In a split decision, however, the panel concluded that open-court hearings on such motions are appropriate, and therefore remanded to the respective trial courts.

Despite agreeing that a remand was necessary, the two judge majority disagreed as to the rationale for the remand. Although finding that Tenn.Code Ann. § 40–14–207(b) does not apply, one judge concluded that under Tenn.Sup.Ct.Rule 13, a trial court may authorize funds for expert services in a capital post-conviction case, if the court determines that such services are necessary to ensure the protection of an indigent capital petitioner's constitutional rights. The other judge relied upon the Court of Criminal Appeals' earlier decision in *Teague*, and concluded that neither the Supreme Court rule nor the statute authorize investigative or expert services in post-conviction capital cases. Both judges found that Rule 706, Tenn. R.Evid., which allows courts to appoint experts on bench-tried issues, and *Burford v. State*, 845 S.W.2d 204 (Tenn.1992), which discusses the dictates of due process in the context of post-conviction proceedings, require that trial courts order funding of support services, if the services are necessary to ensure the protection of the indigent capital petitioner's constitutional rights.

Thereafter, we granted Rule 11 applications for permission to appeal to resolve these important questions of law.

### STATUTORY INTERPRETATION

In this Court, Owens and Payne first assert that Tenn.Code Ann. § 40–14–207(b), and Tenn.Sup.Ct.Rule 13 apply to post-conviction capital cases. Even assuming that the statute and rule do not apply however, they argue that courts have the inherent power under Tenn.R.Evid. 706, and the constitutional authority under *Burford,* to order funds for experts and investigators in capital post-conviction proceedings. In contrast, the

**2.** *Porterfield v. Tennessee*, 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988).

**3.** *State v. Payne*, 791 S.W.2d 10 (Tenn.1990).

**4.** *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).

State argues that there is no right to state-funded support services in post-conviction capital cases under any authority, inherent, statutory, or constitutional.

■ Initially, we observe that under Tennessee law, courts do not decide constitutional questions unless resolution is absolutely necessary for determination of the case and the rights of the parties. *Watts v. Memphis Transit Management Co.,* 224 Tenn. 721, 462 S.W.2d 495 (1971); *Glasgow v. Fox,* 214 Tenn. 656, 383 S.W.2d 9, 13–14 (1964); *State ex rel. West v. Kivett,* 203 Tenn. 49, 55–56, 308 S.W.2d 833 (1957); *City of Greenfield v. Callins,* 195 Tenn. 285, 287, 259 S.W.2d 525 (1953); *State Board of Architectural & Engineering Examiners v. Blalock,* 190 Tenn. 626, 631 231 S.W.2d 326 (1950); *State ex rel. Loser v. National Optical Stores Co.,* 189 Tenn. 433, 444, 225 S.W.2d 263 (1949); *Haynes v. City of Pigeon Forge,* 883 S.W.2d 619, 620 (Tenn.App.1994); *Bah v. Bah,* 668 S.W.2d 663, 668 (Tenn.App.1983). If issues in a case can be resolved on non-constitutional grounds, courts should avoid deciding constitutional issues. *Id.* Accordingly, we must first consider whether or not the statute authorizing trial courts to hold *ex parte* hearings and order funds for expert and investigative services applies in capital post-conviction cases.

■ Our consideration of this issue is guided by well-established rules of statutory construction. The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope. *State v. Sliger,* 846 S.W.2d 262, 263 (Tenn.1993). Where, as here, the parties derive different interpretations from the statutory language, an ambiguity exists, and we must look to the entire statutory scheme in seeking to ascertain legislative intent. *Lyons v. Rasar,* 872 S.W.2d 895, 897 (Tenn.1994). Statutes "in pari materia"—those relating to the same subject or having a common purpose—are to be construed together. *Id.* Finally, in construing statutes courts must presume that the Legislature has knowledge of its prior enactments and knows the state of the law at the time it passes legislation. *Wilson v. Johnson County,* 879 S.W.2d 807, 810 (Tenn. 1994). We must now apply those principles to the statutes at issue in this case.

In support of their argument that trial courts are authorized by statute to hold *ex parte* hearings and order state-funded investigative and expert services in post-conviction capital cases if necessary to the protection of constitutional rights, Owens and Payne rely upon Tenn.Code Ann. § 40–14–207(b). That statute provides:

> (b) In capital cases where the defendant has been found to be indigent by the court of record having jurisdiction of the case, such court in an *ex parte* hearing may in its discretion determine that investigative or expert services or other similar services are necessary to ensure that the constitutional rights of the defendant are properly protected. If such determination is made, the court may grant prior authorization for these necessary services in a reasonable amount to be determined by the court. The authorization shall be evidenced by a signed order of the court. The order shall provide for the reimbursement of reasonable and necessary expenses by the administrative director of the courts as authorized by this part, and rules promulgated thereunder by the supreme court.

That statutory provision is incorporated by reference and applies to post-conviction capital cases, Owens and Payne argue, by virtue of the Post–Conviction Procedure Act, Tenn. Code Ann. § 40–30–121 (1990),[5] which provides that "[i]ndigency shall be determined and counsel and court reporters appointed and reimbursed as now provided for criminal and habeas corpus cases by chapter 14, parts 2 and 3 of this title." Title 40, Chapter 14, Part 2 includes Tenn.Code Ann. § 40–14–207(b) above.

---

**5.** As amended in 1995, and effective May 10, this section is to be codified at Tenn.Code Ann. § 40– 32–115, but is otherwise unchanged.

The State responds that the Court of Criminal Appeals correctly concluded that Tenn.Code Ann. § 40–30–121 refers only to the counsel and court reporter provisions of Title 40, Chapter 14, Parts 2 and 3, and does not incorporate subsection (b) of Tenn.Code Ann. § 40–14–207, dealing with expert and investigative services.

We conclude that both the State and the Court of Criminal Appeals interpreted the statutes at issue too narrowly. A brief review of the legislative history of the two statutes will demonstrate the basis of our conclusion.

Though not originally containing a provision relating to expert and investigative services, the statutory provisions contained in a chapter entitled "Rights of Defendants," regarding appointment of counsel for indigent defendants and discretionary appointment of court reporter for indigent capital defendants, were originally enacted in 1955 and codified as Chapter 20 of Title 40. *See* Tenn. Code Ann. §§ 40–2001 through 40–2013 (1955). In 1965, Chapter 20 was amended and expanded. Thirty-one additional provisions were added, including a provision setting the rates for compensation of counsel for indigent defendants and authorizing reimbursement for counsel's "reasonable and necessary expenses." Tenn.Code Ann. § 40–2023 (1965); . Tenn.Code Ann. §§ 40–2001 through 40–2044 (1965).

The Tennessee Post–Conviction Procedure Act was passed two years later in 1967. *See* Tenn.Code Ann. §§ 40–3801 through 40–3824 (1967). Section 40–3821 of the Post–Conviction Act provided that "[i]ndigency shall be determined and counsel and court reporters appointed and reimbursed as now provided for criminal and habeas corpus cases by §§ 40–2014–40–2043," a part of the "Rights of Defendants" chapter. Therefore, as originally enacted, the post-conviction statute incorporated by reference the provisions of Title 40, ("Rights of Defendants"), governing appointment, compensation, and reimbursement of counsel, and applied those provisions to attorneys appointed to represent indigent petitioners in post-conviction proceedings.

The Post–Conviction Procedure Act was recodified as Chapter 30, Part 1 of Title 40 in 1981, and the statutory provisions relating to compensation and appointment of counsel were recodified as Chapter 14, Part 2 of Title 40.[6] From its initial enactment until this day, however, the post-conviction statute has always incorporated by reference those statutory provisions relating to compensation and reimbursement of appointed counsel in criminal and habeas corpus cases.[7]

Considering the background and historical development of the various statutes at issue, we think that when the Legislature adopted subsection (b) of Tenn.Code Ann. § 40–14–207 in 1984, it intended for that provision to apply to post-conviction capital cases. As previously stated, courts must presume that the Legislature has knowledge of its prior enactments and knows the state of the law at the time it passes legislation. *Wilson v. Johnson County*, 879 S.W.2d 807, 810 (Tenn. 1994). There is no specific limiting language within subsection (b) evidencing a legislative intent to limit its applicability to direct trial proceedings.[8] Moreover, the provision was included within a statute dealing specifically with compensation and reimbursement of counsel, and titled "Compensation—Necessary services for indigent defendants." It

---

**6.** In 1981, the Post–Conviction Procedure Act was recodified as Tenn.Code Ann. §§ 40–30–101 through 40–30–124 (1981) and the statutes relating to compensation of counsel were recodified as Tenn.Code Ann. §§ 40–14–201 through 40–14–315 (1981).

**7.** Tenn.Code Ann. § 40–30–121 (1990 & Supp. 1994), was recodified by a 1995 amendment to the Post–Conviction Procedure Act effective May 10, 1995, as § 40–30–215. 1995 Tenn.Pub.Chap. 207.

**8.** The State argues that the use of the term "defendant" indicates that the Legislature intended to limit the application of the provision. The term "defendant" is used throughout Part 2 of Chapter 14, Title 40. It is doubtful that the State would argue that the other provisions of Chapter 14, Part 2, are inapplicable to post-conviction proceedings.

follows that the Legislature intended for the provision to apply to post-conviction capital cases. Otherwise, the provision would not have been included in a statute pertaining to a subject that was specifically incorporated by reference into the post-conviction statute—reimbursement of counsel. Any prior Tennessee case to the contrary is hereby expressly overruled.[9]

Having concluded that Tenn.Code Ann. § 40–14–207(b), applies to post-conviction cases, it is not necessary that we address the question of whether courts have inherent or constitutional power to order funds for expert and investigative services. As previously stated, courts do not decide constitutional questions unless resolution is absolutely necessary for determination of the case and the rights of the parties. In this case, there is a statutory basis for our decision. Thus, resolution of the constitutional arguments is not necessary.

Our conclusion that Tenn.Code Ann. § 40–14–207(b) applies to post-conviction capital cases should not be interpreted as a "blank check" requiring trial courts to hold *ex parte* hearings and authorize funds in every case. Tennessee Supreme Court Rule 13, § 2(B)(10) delineates the procedure that both the movant and the trial court are to follow when requesting, or ruling upon a request, for expert or investigative services.[10]

■ To obtain an *ex parte* hearing, a capital post-conviction petitioner must submit a written motion to the trial court, alleging why under the particular facts and circumstances of the case, investigative or expert services are necessary to ensure the protection of the petitioner's constitutional rights. A bare allegation that support services are needed is not sufficient. In addition, the motion must include: (a) the name of the proposed expert or service; (b) how, when and where the examination is to be conducted or the services are to be performed; (c) the cost of the evaluation and report thereof; and (d) the cost of any other necessary services, such as court appearances. Tenn.Sup. Ct.Rule 13, § 2(B)(10). Once the petitioner satisfies these threshold procedural requirements, the trial court must conduct an *ex parte* hearing on the motion.

The trial court should grant the motion if, at the hearing, the petitioner demonstrates that investigative or expert services are necessary to ensure the protection of the petitioner's constitutional rights. In the context of direct appeal capital cases we have discussed the showing of particularized need required under Tenn.Code Ann. § 40–14–207(b). We have said that to obtain authorization for funds for support services, "[t]he defendant must show that a substantial need exists *requiring* the assistance of state paid supporting services and that his defense cannot be fully developed without such professional assistance." *State v. Evans*, 838 S.W.2d 185, 192 (Tenn.1992). Likewise, we have upheld a trial court's denial of a request for funds to employ an expert when the request "was accompanied by little more than undeveloped assertions that the services were needed to attempt to counter the State's proof." *State v. Cazes*, 875 S.W.2d 253, 261 (Tenn.1994).

Those same principles apply to a trial court's evaluation of a request for expert or investigative services in the post-conviction context. Specifically, a petitioner must demonstrate by specific factual proof that the services of an expert or an investigator are necessary to establish a ground for post-conviction relief, and that the petitioner is unable to establish that ground for post-conviction relief by other available evidence.

9. Although *Teague v. State*, 772 S.W.2d 915 (Tenn.Crim.App.1988), *perm. app. denied* (Tenn. 1989), can be read to conflict with our holding herein, and is to that extent overruled, we note that the petitioner in that case was not indigent and had already obtained an investigator at his own expense. Therefore, the *Teague* court's interpretation of Tenn.Code Ann. § 40–14–207(b) and Supreme Court Rule 13 was dicta.

10. Rule 13 does not create rights. It merely contains the procedural mechanism for implementing Tenn.Code Ann. § 40–14–207(b). *Allen v. McWilliams*, 715 S.W.2d 28, 29 (Tenn.1986).

An unsupported allegation to that effect will not suffice.

Of course, Tenn.Code Ann. § 40–14–207(b) vests with the trial court discretion to determine if investigative or expert services are necessary to ensure that the movant's constitutional rights are protected. Accordingly, the guiding principles discussed above must be applied on a case-by-case basis, in consideration of the existing facts and circumstances.

If the motion for investigative or expert services is granted, "the court must grant the prior authorization for these expert services in a reasonable amount to be determined by the court." Tenn.Sup.Ct.Rule 13, § 2(B)(10); *see also* Tenn.Code Ann. § 40–14–207(b). In other words, the trial court must specify in its order granting the motion, the particular expert appointed, the hourly rate, and the total monetary amount approved. Tenn.Sup. Ct.Rule 13, § 2(B)(10); *see also* Tenn.Code Ann. § 40–14–207(b). Requiring prior trial court approval of both the expert and the costs focuses the *ex parte* hearing and prevents abuse.

Applying those principles to these consolidated cases, we remand to the respective trial courts for a determination, in the first instance, of whether Owens and Payne satisfied the procedural prerequisites to obtaining an *ex parte* hearing. If so, the *ex parte* hearing is to be conducted in conformity with this decision.

### CONCLUSION

For the foregoing reasons, we conclude that Tenn.Code Ann. § 40–14–207(b), applies to capital post-conviction cases. Therefore, under appropriate circumstances, an indigent petitioner in a post-conviction capital case is entitled to an *ex parte* hearing on a motion for expert or investigative services. Accordingly, we reverse, in part, the Court of Criminal Appeals' judgment and remand these cases to the respective trial courts for further proceedings consistent with this opinion. Costs of this appeal are taxed to the State of Tennessee.

REID and BIRCH, JJ., concur.

DROWOTA, J. and SAMUEL L. LEWIS, Special Judge, dissent.

SAMUEL L. LEWIS, Special Judge, dissenting.

I respectfully dissent from the majority's opinion that Tennessee Code Annotated section 40–14–207(b) (1990) applies to post-conviction cases.

Whether post-conviction petitioners are entitled to expert support services at state expense is primarily a question of statutory interpretation involving three main provisions: (1) Tennessee Code Annotated section 40–30–101, *et seq.,* the Post–Conviction Procedure Act, focusing primarily on Tennessee Code Annotated section 40–30–121 (1990), which deals with the determination of indigency and appointment of counsel and court reporters in post-conviction cases; (2) Tennessee Code Annotated section 40–14–201, *et seq.,* dealing with counsel for indigents; and (3) Rule 13 of the Supreme Court of Tennessee, promulgated pursuant to Tennessee Code Annotated section 40–14–206 (1990). *Allen v. McWilliams,* 715 S.W.2d 28, 30 (Tenn.1986).

The natural and ordinary meaning of the language used in the statutes reveals no intention of the General Assembly to provide state subsidized support services to indigent post-conviction petitioners.

Tennessee Code Annotated section 40–30–101, *et seq.* governs post-conviction proceedings. The portion of the Post–Conviction Procedure Act relevant to this issue is section 40–30–121 which provides as follows: **"Determination of indigency—Appointment of counsel and court reporters.—In**digency shall be determined and counsel and court reporters appointed and reimbursed as now provided for criminal and habeas corpus cases by chapter 14, parts 2 and 3 of this title." The plain language of this section incorporates the counsel and court reporter provisions of chapter 14.

The General Assembly passed Tennessee Code Annotated section 40–14–201, *et seq.* in

1965 following the Supreme Court's decision in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). *Allen*, 715 S.W.2d at 30. Sections 40–14–206 through 40–14–210 relate directly to compensation of counsel for indigent defendants. The primary portion of this part is section 40–14–207(b) which provides:

> In capital cases where the defendant has been found to be indigent by the court of record having jurisdiction of the case, such court in an *ex parte* hearing may in its discretion determine that investigative or expert services or other similar services are necessary to ensure that the constitutional rights of the defendant are properly protected.

Tenn.Code Ann. § 40–14–207(b) (1990).

The sole reference made to capital cases denominates the party potentially entitled to support services as the "defendant," not the petitioner. Further, because Tennessee Code Annotated section 40–30–121 specifically incorporates only the counsel and court reporter provisions in chapter 14, the provisions in section 40–14–207(b) are simply additional support services that the General Assembly did not intend to apply to post-conviction cases.

The Supreme Court promulgated Rule 13 pursuant to Tennessee Code Annotated section 40–14–206 which provides that "the supreme court shall prescribe by rule the nature of the expenses" for which the state will allow reimbursement. Tenn.Code Ann. § 40–14–206 (1990). The statute specifically limits the authority of the court to prescribe those rules normally required to ensure compliance with the provisions of title 40, chapter 14. *See id.* Rule 13 does not create any right for defendants or petitioners not created by statute. Because neither the Post-Conviction Procedure Act, Tennessee Code Annotated section 40–30–101 *et seq.*, nor title 40, chapter 14, dealing with the rights of defendants, provide for support services at state expense, we cannot consider Rule 13 to grant such authority.

Rule 13 is divided into two parts. The first part deals with the appointment of coun-

sel, and the second deals with the compensation for appointed counsel. Rule 13 defines a capital case for purposes of the Rule and the court as follows:

> A case in which an individual is indicted for an offense that is punishable by death and wherein the district attorney general announces to the court at any time, prior to the presentation proof, that the state will insist upon the death penalty. See Tenn.Code Ann. § 40–14–207.

Tenn.S.Ct.R. 13, § 1.

The plain language used in Rule 13 to effectuate the intent of section 40–14–206 instructs us that the court is to apply the rule only to the trial of a criminal defendant, not to collateral proceedings filed after trial, conviction, or sentencing. A post-conviction action is not a "case ... wherein the District Attorney General announces ... that the state will insist upon the death penalty." *Id.*

Our courts recognize that "[t]he fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention or purpose of the legislature as expressed in the statute." *Worrall v. Kroger Co.*, 545 S.W.2d 736, 738 (Tenn.1977). "[L]egislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, when read in the context of the entire statute, without any forced or subtle construction to limit or extend the import of the language." *Id.* The absence of any requirement for the provision of support services at state expense for indigent post-conviction petitioners is dispositive of this issue. Presumably, the legislature would have included a requirement had it intended such an application.

Rule 706(b) of the Tennessee Rules of Evidence specifically provides that the compensation for experts appointed by the court in bench tried issues is payable from "funds which may be provided by law in criminal cases and civil actions and condemnation proceedings." Rule 706(b) does not, by itself, authorize a court to appoint such an expert at state expense. Instead, it requires compensation only ·if "provided by law."

The conclusion that the legislature did not authorize support services for indigent post-conviction petitioner in title 40, chapters 14 or 30 is consistent with prior opinions of the court of criminal appeals, none of which this court reviewed pursuant to Tennessee Rule of Appellate Procedure 11.

The primary case relied on by both the trial court and the court of appeals in deciding the issue in this case was *Teague v. State,* 772 S.W.2d 915 (Tenn.Cr.App.1988), *cert. denied,* 493 U.S. 874, 110 S.Ct. 210, 107 L.Ed.2d 163 (1989). In *Teague,* the petitioner retained an attorney and investigator for his trial. *Id.* at 927. On two separate occasions during the post-conviction process, his trial attorney moved for the appointment of a second attorney and for an investigator at state expense. The court appointed a second attorney to assist the petitioner, but it denied his request for investigative services. *Id.* The court of criminal appeals affirmed the trial court's denial of an investigator and unanimously held:

> A fair reading of T.C.A. Sec. 40–14–207(b) and Rule 13 of the Tennessee Supreme Court, coupled with the fact that T.C.A. Sec. 40–30–121 is silent as to these matters, leads this Court to the conclusion that the provisions of this statute and rule are limited in scope and application to the trial of an accused for a capital offense when the district attorney general has announced his intention to seek the death penalty. The statute and rule do not apply to post-conviction proceedings notwithstanding the fact the petitioner has been sentenced to the extreme penalty of death.

*Id.* at 927.

Both before and after the decision in *Teague,* the Court of Criminal Appeals held that Tennessee Code Annotated section 40–14–207(b) had no application to post-conviction proceedings. *See State v. Laney,* No. 873, 1989 WL 150839, at *4 (Tenn.Cr.App. at Knoxville 14 December 1989); *Caruthers v. State,* No. 1164, 1988 WL 124013, at *6 (Tenn.Cr.App. at Knoxville 22 November 1988).

Neither the Due Process Clause nor the Equal Protection Clause of the United States Constitution requires that the state provide post-conviction petitioners with experts at state expense. Likewise, there is nothing in the Tennessee Constitution which the court can construe to provide post-conviction petitioners with experts at state expense.

A look at the analysis utilized by the United States Supreme Court to determine the extent of process required in indigent post-conviction petitions is instructive in resolving this issue. The proper starting point is to know that the Constitution does not require post-conviction procedures. *Pennsylvania v. Finley,* 481 U.S. 551, 557, 107 S.Ct. 1990, 1994, 95 L.Ed.2d 539, 547 (1987). However, once a state chooses to provide post-conviction remedies, it must do so in a manner that meets constitutional standards. *See id.* In *Finley,* the Supreme Court held that the fundamental rights as mandated by the Due Process Clause do not require states to supply a lawyer in the post-conviction context. *Id.* The court based the decision in *Finley* on its holding in *Ross v. Moffitt,* 417 U.S. 600, 610, 94 S.Ct. 2437, 2443–44, 41 L.Ed.2d 341, 351 (1974) that the right to appointed counsel extends to the first appeal as of right and no further. This dichotomy between the stages of a criminal proceeding, with the trial and direct appeal as of right on one side and discretionary appeals and collateral attacks on the other, is based upon the change in the position of the parties. Once the defendant becomes the party initiating the legal proceeding, the constitutional considerations are different.

> [I]t is ordinarily the defendant, rather than the State, who initiates the appellate process, seeking not to fend off the efforts of the State's prosecutor but rather to overturn a finding of guilt made by a judge or a jury below. The defendant needs an attorney on appeal not as a shield to protect him against being "hailed into court" by the State and stripped of his presumption of innocence, but rather as a sword to upset the prior determinations of guilt.

*Ross,* 94 S.Ct. at 2444.

A person's right to counsel ends with the conclusion of the first stage of direct appeal.

The *Ross* considerations apply with more force to post-conviction review. *Finley,* 107 S.Ct. at 1994. In *Finley,* the court logically reasoned that "since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction [he certainly] has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process." *Id.* at 1993. For the Constitution to require support services for indigent capital post-conviction petitioners, but not to require counsel makes no sense whatsoever. In the absence of a constitutional right to counsel, there can be no constitutional right to support services at state expense.

While this court is always the final arbiter of the Tennessee Constitution and is free to expand the minimum level of protection mandated by the federal constitution, the court noted in *Burford v. State,* 845 S.W.2d 204, 207 (Tenn.1992) that it has long been its practice to construe article I, section 8 of the Tennessee Constitution synonymously with the fifth and fourteenth amendments of the United States Constitution. The standards of due process followed by the federal courts are sufficient to protect the rights of indigent post-conviction petitioners in Tennessee.

For the foregoing reasons I respectfully dissent from so much of the majority's opinion that holds that indigent post-conviction petitioners who have been convicted with a capital offense and sentenced to death are entitled to state paid, investigative, or expert services.

DROWOTA, III, J., concurs.