*606 DROWOTA, Justice,
dissenting.
I dissent from the majority decision interpreting Tenn.Code Ann § 39-16-502(a)(1) (1991 Repl.) as applying only to false statements initiated by an individual to the exclusion of false statements given in response to inquiries by law enforcement officials. For the reasons explained below, the majority’s interpretation is contrary to the plain language of the statute. Therefore, I would reverse the Court of Criminal Appeals’ decision and affirm the defendant’s conviction for making a false report.

STATUTORY INTERPRETATION

The most basic principle of statutory construction is to ascertain and give effect to legislative intent. Owens v. State, 908 S.W.2d 923, 926 (Tenn.1995). Legislative intent is to be ascertained whenever possible from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language. Carson Creek Vacation Resorts, Inc. v. State, Dept. of Revenue, 865 S.W.2d 1, 2 (Tenn.1993) (emphasis added). Courts must presume that the General Assembly intended that every word used in a statute would have a purpose and convey a meaning. Cohen v. Cohen, 937 S.W.2d 823, 827 (Tenn.1996). The presence of words of limitation in one part of a statute indicates that the absence of such words from other parts of the same statute is an intentional legislative choice. State v. Harkins, 811 S.W.2d 79, 82 (Tenn.1991). If the legislative intent is expressed in a manner devoid of contradiction and ambiguity, there is no room for interpretation or constructions, and courts are not at liberty, on consideration of policy or hardship to depart from the words of the statute. Carson Creek Vacation Resorts, Inc., 865 S.W.2d at 2. Where the language contained within the four corners of a statute is plain, clear, and unambiguous, the duty of the courts is simple and obvious, “to say sic lex scripta, and obey it.” Id, quoting Miller v. Childress, 21 Tenn. (2 Hum.) 320, 321-22 (1841).
The language contained within the four corners of Tenn.Code Ann. § 39-16-502(a) is not ambiguous. The statute provides as follows:
(a) It is unlawful for any person to:
(1) Report to a law enforcement officer an offense or incident ■within the officer’s concern:
(A) Knowing the offense or incident did not occur;
(B) Knowing the person reporting has no information relating to the offense or incident; or
(C) Knowing the information relating to the offense is false; or
(2) Intentionally initiate or circulate a report of a past, present, or impending bombing, fire or other emergency, knowing that the report is false or baseless and knowing:
(A) It will cause action of any sort by an official or volunteer agency organized to deal with those emergencies;
(B) It will place a person in fear of imminent serious bodily injury; or
(C) It will prevent or interrupt the occupation of any building, place of assembly, form of conveyance, or any other place to which the public has access.
(Emphasis added.) The natural and ordinary meaning of the word “report,” includes statements given in response to inquiries by law enforcement officials. To “report” simply means “[t]o give an account of, to relate, to tell, to convey or disseminate information.” Black’s Law Dictionary, 1300 (6th ed.1990). The majority’s interpretation is an unwarranted limitation of the meaning of the language of the statute, in contravention of this Court’s duty.
Where the language of a statute is free from ambiguity, resort to extrinsic aids to determine legislative intent is not appropriate. Roseman v. Roseman, 890 S.W.2d 27, 29 (Tenn.1994); Carson Creek Vacation Resorts, Inc., 865 S.W.2d at 2. Because the language of the statute at issue in this case is clear, the majority’s reliance upon extrinsic aids to determine legislative intent is inappropriate and unnecessary. However, even if statutory language is ambiguous, when discerning legislative intent it is only appropriate to consider statutes “in pari materia”— *607 those relating to the same subject or having a common purpose. Owens, 908 S.W.2d at 926. In this case, the majority relies upon the definition of the term “report” in other unrelated statutes to support its interpretation. Conspicuously absent from the majority decision is a discussion of the other words used in the remainder of the statute at issue which expressly limit application of Tenn. Code Ann. § 39—16—502(a)(2) (1991 Repl.) to false reports “intentionally initiate[d] or circulate[d]” by individuals. It is clear that, had the General Assembly intended to limit application of Tenn.Code Ann. § 39-16-502(a)(1) to declarant-initiated false reports, appropriate language was available to do so. Therefore, the absence of an express limitation from subsection (a)(1) militates against the interpretation adopted by the majority and indicates that the General Assembly deliberately chose to give that subsection a broad application. Harkins, 811 S.W.2d at 82.
Finally, the important element to consider in determining whether a false report has been made is whether the person gave the report knowing (A) the offense or incident did not occur; (B) the person reporting has no information relating to the offense or incident; or (C) the information relating to the offense is false. Tenn.Code Ann. § 39-16-502(a)(1) (1991 Repl.). By focusing upon the party initiating the contact during which the false statement is given, the majority exalts form over substance. See State v. Fenster, 2 Conn.Cir.Ct. 184, 199 A.2d 177 (1962) (so characterizing the definition of “report” adopted in People v. Smith, 131 Cal.App.2d Supp. 889, 281 P.2d 103 (Cal.Super.1955), upon which the majority in this case rely.)
I would hold, as Judge Jerry Smith held in his dissent in the Court of Criminal Appeals, that “report,” as used in Tenn.Code Ann. § 39-16-502 (1991 Repl.), includes statements given in response to inquiries by law enforcement officials. Therefore, I would reverse the Court of Criminal Appeals’ decision and affirm the defendant’s conviction of making a false report. I respectfully dissent from the majority’s decision.
I am authorized to state that Justice HOLDER concurs in this Dissenting Opinion.