**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT NASHVILLE**

**JANUARY 1998 SESSION**

FILED

March 18, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **C.C.A. NO. 01C01-9703-CC-00082** |
| Appellee, | ) | |
| | ) | **LEWIS COUNTY** |
| VS. | ) | |
| | ) | **HON. DONALD P. HARRIS,** |
| **GENE GRUZELLA,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Mistreating a corpse) |


FOR THE APPELLANT:

**D. STUART CAULKINS**
212 E. Main St.
Franklin, TN   37064


FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**ELIZABETH B. MARNEY**
Asst. Attorney General
425 Fifth Ave., N.
Nashville, TN   37243-0493

**JOSEPH D. BAUGH**
District Attorney General

**RONALD L. DAVIS**
Asst. District Attorney General
P.O. Box 937
Franklin, TN   37065-0937


OPINION FILED:_____


**REVERSED AND DISMISSED**


**JOHN H. PEAY,**
Judge

## O P I N I O N

The defendant was charged with unlawfully disposing of a corpse and with mistreating a corpse. A jury acquitted him of the first offense but convicted him of the latter. The defendant was subsequently sentenced to six years incarceration. In this appeal as of right, the defendant challenges the sufficiency of the evidence and the constitutionality of the statute which he was convicted of violating. Upon our review of the record, we reverse the defendant's conviction and dismiss the charge against him.

The State's proof in this case was very limited. Larry Hensley, the Lewis County Sheriff, testified that in January 1993 he had received a report that the defendant's mother, Thora Foster, "had been missing sometime around November [1992]." He and Don Schwendimann, an assistant district attorney, subsequently interviewed the defendant about the whereabouts of his mother. Hensley testified that, "first thing [the defendant] told us, he said she's in an illegal nursing home in Alabama." The defendant would not, however, tell the men where in Alabama. Hensley then extended his investigation but found no trace of the missing woman.

Hensley testified that, some weeks later, the defendant had told him "that she was real sick, she died, and he kept her a few days and he said he chopped her up and burnt her, just a little at a time. . . . He piled up brush out in the front yard and set it afire, poured gas on it, and that's the way he told us he did it." Hensley further testified that the defendant had shown him "two or three different spots, but we never did find any bones or anything. . . . We found where he had piled up brush, and we found just black places where he burnt a lot of brush. He probably had ten or twelve acres of ground that he'd been clearing, and he piled up a bunch of brush." On cross-examination, Hensley

2

admitted that the TBI had been involved in the investigation of the burned areas, and that they had found no trace of any human remains having been burned there. He also admitted that the search of the trailers in which the defendant and his mother had lived had yielded nothing that substantiated the defendant's statement.

Vanessa Bryan, an attorney with the public defender's office, testified that she had been representing the defendant during the time that the investigation about his mother's whereabouts was proceeding. She testified that he had told her to tell Schwendimann "that his mother had died of natural causes and that he had burned her body in the compost pile." On cross-examination, she testified that the defendant had not told her anything about having chopped up his mother's body.

Don Schwendimann also testified that, on his initial visit with the defendant, the defendant had stated that his mother was "in an illegal nursing home in Alabama. That was his word, ‹illegal.'" Later, he testified, "[the defendant] authorized two assistant public defenders to tell me that he had burned his mother's body, that she was dead." Then in July 1993, according to Schwendimann, the defendant had testified under oath at a hearing that his mother had died on November 9, 1992, but that he had not notified anyone. The defendant had further testified that he had "cremated her on the property" and that it had taken him a day or two to accomplish the cremation.

The defendant put on no proof.

The defendant first contends that the evidence is insufficient to support his conviction because there is no corroborative proof of the crime. Before an accused may be convicted on the basis of his own inculpatory statements, there must be at least slight

3

corroborating evidence of the corpus delicti of the crime.  See  State v. Ervin, 731 S.W.2d 70, 72 (Tenn. Crim. App. 1986).  The "corpus delicti" of a crime is defined as "the body, foundation or substance of the crime, which ordinarily includes two elements:  the act and the criminal agency of the act."  Black's Law Dictionary, Sixth Ed.  Thus, the State must prove two elements in order to establish the corpus delicti:  "(1)  That a certain result has been produced, and (2)  That the result was created through criminal agency."  Ervin, 731 S.W.2d at 71-2.  In this case, the defendant was convicted of knowingly, without legal privilege, physically mistreating a corpse in a manner offensive to the sensibilities of an ordinary person.  T.C.A. § 39-17-312(a)(1).  Thus, the State had to prove that a corpse had been physically mistreated by someone acting knowingly and without legal privilege.  Yet the only proof that a corpse had been mistreated came from the defendant's own statements.

The State argues that the evidence of burning on the defendant's property with no trace of human remains and unopened mail addressed to Thora Foster found in her trailer is sufficient corroboration.  We must disagree.  Neither of these pieces of evidence offer even a scintilla of support to proving that the defendant mistreated a corpse.  That they corroborate certain details of his statements is not enough: they must independently offer proof of the crime itself.  The defendant was not convicted of illegally burning brush on his property nor of leaving his mother's mail unopened.  He was convicted of mistreating a corpse.  Yet the State has no corroborative proof that the defendant either chopped up his mother's body or thereafter burned it.  Accordingly, we have no choice but to reverse the defendant's conviction and dismiss the charge.

The defendant also contends that the statute which he was convicted of violating is unconstitutional.  Because we have resolved this case on other grounds, we

4

decline to address the constitutionality issue.  See Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995) ("If issues in a case can be resolved on non-constitutional grounds, courts should avoid deciding constitutional issues.")

The judgment of conviction below is reversed and the charge of mistreating a corpse is dismissed.

_____
JOHN H. PEAY, Judge

CONCUR:

_____
JERRY L. SMITH, Judge

_____
 THOMAS T. WOODALL, Judge