IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 14, 2005 Session

## ROBERT WILLIAM FULLER, JR. v. LYNN GAIL FULLER

**Appeal from the Chancery Court for Bradley County**
**No. 93-253     Jerri S. Bryant, Chancellor**

_____

**No. E2004-02537-COA-R3-CV  - FILED AUGUST 22, 2005**

_____

In this post-divorce action, Robert William Fuller, Jr.  ("Father") filed a petition seeking, among other things, a modification of the custody arrangement with respect to the parties' minor son, Ryan; an enforcement of parenting time with both Ryan and his daughter, Caitlyn; and a finding of contempt against his former wife, Lynn Gail Harrison, formerly Fuller ("Mother").  Mother filed a counterclaim, seeking an increase in child support.  Following a hearing, the trial court essentially denied Father's petition.  It left Mother as the primary residential parent of both children.  In addition, the trial court ordered that Father's visitation with Caitlyn would be at the sole discretion of a named counselor.  The trial court did not find Mother in contempt.  Father appeals.  We affirm in part, reverse in part, and modify in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part; Reversed in Part; Modified in Part; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY and SHARON G. LEE, JJ., joined.

H. Franklin Chancey, Cleveland, Tennessee, for the appellant, Robert William Fuller, Jr.

Barrett T. Painter, Cleveland, Tennessee, for the appellee, Lynn Gail Harrison.

**OPINION**

I.

Father and Mother were divorced in 1993.  Mother was named primary residential parent of both of the parties' minor children; Father was granted reasonable visitation.  Over the next five years, the parties returned to court on two separate occasions, resulting in court orders that, among other things, increased Father's visitation time with his children.

On January 20, 2004, Father filed a petition to modify the custody arrangement. He asked to be named the primary residential parent of Ryan and sought to enforce visitation time with Caitlyn. In addition, Father requested that Mother be held in contempt for interfering with his court-decreed parenting time. Mother answered Father's petition and filed a counterclaim for an increase in child support.

The trial court conducted a hearing on the parties' competing pleadings. At the conclusion of the hearing, the trial court found that there was a material change in circumstances warranting an increase in Father's visitation time with Ryan, though the court declined to name Father as the child's primary residential parent. With respect to Caitlyn, the court ordered that Father's visitation with her would occur only with the consent of the children's counselor, Dr. Stulce. In addition, the court ordered an increase in Father's child support obligation. The court declined to find Mother in contempt of court. These findings were memorialized in an order entered October 8, 2004. From this order, Father appeals.

## II.

As this is a non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness as to the trial court's factual determinations – a presumption we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); ***Wright v. City of Knoxville***, 898 S.W.2d 177, 181 (Tenn. 1995); ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are accorded no such presumption. ***Campbell v. Florida Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996); ***Presley v. Bennett***, 860 S.W.2d 857, 859 (Tenn. 1993).

## III.

## A.

Father's issues on appeal can be succinctly stated as follows:

> (1) Does the evidence preponderate against the trial court's judgment that it is in the best interest of the parties' son, Ryan Fuller, for Mother to continue as the child's primary residential parent with full decision-making authority with respect to him?
>
> (2) Does the evidence preponderate against the trial court's judgment refusing to find Mother in contempt of court for failing to send the parties' daughter, Caitlyn, to Father for visitation?
>
> (3) Does the evidence preponderate against the trial court's judgment providing that future contact between Father and Caitlyn would be at the sole discretion of a third party?

(4) Did the trial court violate Father's due process rights by vesting a counselor with the sole discretion as to whether Caitlyn visits with Father?

We will address each of these issues in turn.

B.

First, Father contends that the evidence preponderates against the trial court's finding that Mother should continue to serve as Ryan's primary residential parent with full decision-making authority.

The testimony of the parties revealed, without any real dispute, that Ryan's academic performance has suffered in the recent years. While in the sixth grade, Ryan received four F's and three D's on his report card, and in the seventh grade (which he completed just prior to the hearing), Ryan's report card reflected six F's and four D's. In response to these poor grades, Father believed that Ryan's participation in school athletics should be suspended until his grades improved. Mother, however, disagreed with this approach and chose to deny Ryan certain privileges, such as television and video games. When Mother was cross-examined about her decision to allow Ryan to continue playing sports, she testified that she gave into Ryan "because I did feel like he really was that upset [about the prospect of not being able to wrestle] and that it would really be a changing factor for him." Mother went on to state she hoped that allowing Ryan to continue with athletics would motivate him to improve his grades, but she admitted that his grades had not improved.

While the trial court increased Father's parenting time with Ryan, it declined to name Father as primary residential parent. We find that the evidence does not preponderate against the trial court's decision to leave Mother as Ryan's primary residential parent. We do find, however, that the evidence preponderates against allowing Mother to continue to make decisions with respect to Ryan's education and extracurricular activities. It is clear from the record that Mother's approach to motivating Ryan to improve his work in school has not been successful, as Ryan's grades declined from sixth grade to seventh grade. We believe it is in Ryan's best interest that Father be designated as the parent to make decisions with respect to Ryan's education and related activities. Accordingly, we modify the trial court's judgment to reflect that Father has exclusive decision-making authority over all school issues pertaining to Ryan, including, but not limited to, Ryan's participation in extracurricular school activities, including athletics. In so holding, we caution that our decision should not be broadly construed as holding that there is one way, and one way only, to motivate a child to improve his or her performance in school. Such a judgment is beyond our area of expertise; furthermore, there is no expert testimony before us, one way or the other, on this subject. Our decision is simply a recognition on our part that Mother's approach is not working *in Ryan's case*.

C.

Father next contends that the trial court erred in refusing to find Mother in contempt for interfering with Father's parenting time with Caitlyn. We disagree.

The trial court made the following remarks to the parties at the conclusion of the hearing:

> I want the parties to hear me. But for you-all to be this angry and this noncommunicative after ten years is not normal. It's not. And I looked through this file to see what kind of divorce it was and what was really going on and what's the real story here, and it's a pretty sanitized file.
>
> For the good of the lawyers that handled the divorce, they didn't put a lot of the dirt in the file. So should your children ever decide to read your divorce file someday, it's not going to taint them, I hope, any more. But it doesn't give me much guidance as to figuring out why you-all hate each other so much.
>
> I mean, good grief. It's been ten years. Get over it. You're both remarried. You've got to move on. And because you-all can't move on, these children can't move on. These children have hit the ceiling. They've hit this glass ceiling, and they cannot continue to grow because you-all have placed a limit on them based on you-all's lack of communication.
>
> I don't know if you just can't see it. But there is so much negative tension between the two of you-all here and in the e-mails that I read and the letters back and forth and just the answers that I hear when you talk about each other that it is eating at the both of you and reflecting negatively on your own personal quality of life; I'm sure on the quality of life of your spouses, and I'm not going to look at some of the spouses in here; and most definitely, and the one that I'm concerned about, the quality of life of your children.
>
> And hopefully in this parenting class you will have a lightning bolt come down and wake you up and let you see what's going on because that's the purpose of this class, is to wake you up and say, oh, my goodness, what am I doing to my children. And maybe this class will help you since mediation and talking and counseling hasn't been able to do that so far.

It is clear from these remarks that the trial court found both parties to be equally at fault in their parenting issues. The evidence preponderates that problems with Caitlyn's visitation can be attributed as much to Father as to Mother. Accordingly, we find that the evidence does not preponderate against the trial court's decision on the contempt issue. Accordingly, we decline to interfere with the court's judgment with respect to the contempt charge.

D.

Finally, Father asserts that the trial court erred in holding that any future contact between Father and Caitlyn would be at the sole discretion of Caitlyn's counselor, Dr. Stulce.

We agree that the trial court erred in making this decision. At the time of the hearing in the instant case, Cailtyn was 15 years of age and she is now 16. The evidence preponderates against a holding that anything has occurred in the relationship between Father and his daughter that warrants placing a counselor in control of whether, and to what extent, Caitlyn visits with her Father. While a counselor may be helpful in facilitating the court-decreed visitation, the power vested in the counselor by the trial court is unwarranted. Father's visitation with Caitlyn will be as set forth in the most recent pre-appeal order of the trial court addressing this issue.

We note that Father frames the "counselor" issue in terms of a violation of his due process rights. The law is clear that we should decline to address constitutional issues "unless resolution is absolutely necessary for determination of the case and the rights of the parties." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995) (citations omitted). "If issues in a case can be resolved on non-constitutional grounds, courts should avoid deciding constitutional issues." *Id.* Because we find that the evidence preponderates against the trial court's decision on this issue, we decline to address Father's due process argument.

IV.

The judgment of the trial court designating Mother as primary residential parent with full decision-making authority with respect to both children is hereby modified so as to vest Father with exclusive decision-making authority with respect to Ryan's education and extracurricular activities. As modified, that portion of the judgment is affirmed. The judgment of the trial court refusing to find Mother in contempt of court is hereby affirmed. The judgment of the trial court providing that Father's visitation with the parties' daughter is subject to the consent of the child's counselor, Dr. Stulce, at his sole discretion, is hereby reversed and held for naught. This case is remanded to the trial court for the enforcement of the trial court's judgment, as modified, and for collection of costs assessed below, all pursuant to applicable law. Exercising our discretion, we tax the costs on appeal one-half to the appellant, Robert William Fuller, Jr., and one-half to the appellee, Lynn Gail Harrison.

-5-

_____
CHARLES D. SUSANO, JR., JUDGE