IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 18, 2018 Session

## LINDA C. NOE v. SOLID WASTE BOARD OF HAMBLEN COUNTY/MORRISTOWN

**Appeal from the Circuit Court for Hamblen County**
No. 16CV127      Beth Boniface, Judge

_____

**No. E2017-00255-COA-R3-CV**
_____

The petitioner in this Tennessee Public Records Act proceeding requested hard copies and electronic copies of records relating to a landfill maintained by the Solid Waste Board of Hamblen County/Morristown and an upcoming meeting of the Board. The trial court held a hearing as required by the TPRA, after which it dismissed the petition, holding that, under the facts presented, the petitioner was given access to the records in compliance with the TPRA. Upon our review, we conclude that, while some of the records sought were not available at the time of petitioner's request, some records were available and were not produced for petitioner's review. Accordingly, we reverse the judgment in part and affirm in part; we remand the case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in Part and Affirmed in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN WESLEY MCCLARTY, J., joined.

Linda C. Noe, Morristown, Tennessee, Pro Se.

Christopher P. Capps, Morristown, Tennessee, for the appellee, Solid Waste Board of Hamblen County/Morristown.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

On June 3, 2016, Linda Noe ("Ms. Noe" or "Petitioner") left a voicemail for Daniel Winter, the Director and records custodian of the Solid Waste Board of Hamblen County/Morristown ("the Board"), seeking copies of certain records maintained by the

Board: (1) an electronic copy of the 2016-2017 proposed budget; (2) an electronic copy of a packet from the May 2016 meeting of the Board ("the May packet"); and (3) a hard copy of a list of possible commercial landfill users posing as residential users that had been discussed at the May 2016 meeting. Getting no response, she followed up with an email to Mr. Winter on June 7 in which she stated, "I will fill out a written request for the above [records] when I come to get the electronic and hard copies. I will also bring a flash drive with me. Please let me know what day and time works best for you or Stephanie [, the Board's office manager,] and I will try to work around your schedule."

Mr. Winter responded by email on June 9, saying "Next week would work best. Stephanie is on vacation till Tuesday of next week." Ms. Noe responded that she would like to get the documents on June 10 rather than wait until Tuesday, June 14, due to an upcoming meeting of the Board on June 17. Ms. Noe received no response and went to the Board office on June 14, where she completed an "Inspection/Duplication of Records Request" form.[1] On the form, in addition to the records initially requested by voicemail and email, she included a request for an "electronic cop[y]" of the board packet for the June 17 meeting ("the June packet"). She went to the Board office on June 15 and 16 and, for various reasons, did not receive the documents; she also attempted to contact the Board's attorney on June 16 but received no response.

Pursuant to the Tennessee Public Records Act ("TPRA"), Tennessee Code Annotated section 10-7-505, Ms. Noe filed a "Petition for Access to Public Records and Motion for Show Cause Order" in Hamblen County Circuit Court on June 17. The petition prayed for the following relief: that the court issue a show cause order requiring the custodian of records to appear and show cause why her petition for access should not be granted; that the court find that the Board willfully and wrongfully denied her access to public records that were readily available and accessible; that the court find the Board willfully and wrongfully refused to allow her the right to inspect the proposed budget to be voted on at 9 a.m. on June 17; and that the court order that she be given access to the records immediately or as soon thereafter as possible.

Several days later, the Board's attorney filed an affidavit and notice of filing of the 77 pages of records at issue; the affidavit states that he sent Ms. Noe the documents she requested "by e-mail on June 22, 2016 at approximate[ly] 11:04 a.m. EST" and that he "had previously advised Petitioner [that] the documents would be available at my office for pickup, but she declined."

After issuing a show cause order to the Board on June 20, the court held a hearing on June 24 at which Ms. Noe and Mr. Winter testified. Three exhibits were entered into

---

[1] This form instructs the requester to "[r]eturn this request either in person, by mail to Hamblen County Morristown Solid Waste System, P.O. Box 2108, Morristown, TN 37816, or email to [Mr. Winter's email address]."

evidence: a collective exhibit of two of Ms. Noe's previous record requests; Ms. Noe's June 2016 record request; and a printout of Tennessee Code Annotated section 10-7-503.

The court entered an order on July 26, dismissing the Petition with prejudice; attached to the order is a transcript of the court's ruling in which the court found that Ms. Noe's "formal request for the information . . . was [made] on June 14th, 2016" and that "in this particular situation with these particular sets of facts, that [the records were given to Ms. Noe] in an appropriate time and in a practical amount of time."

Ms. Noe moved to alter or amend the judgment on August 26, stating that "testimony indicates that those records were 'readily available' prior to and on June 14 when Noe came to the S[olid] W[aste] B[oard's Office] and filled out her written request." Her motion does not cite to specific testimony that supported her argument, and she did not file any supporting exhibits or affidavits with the motion. The trial court held a hearing and denied the motion by order entered January 6, 2017. The court held that "the arguments of [Ms. Noe] . . . surpass legal argument and present new evidence to the Court. . . . In the present situation, the controlling law did not change before the judgment became final; the new evidence was readily available prior to the last hearing; and there was no clear error of law to correct."

Ms. Noe filed a second motion to alter or amend on February 6, largely on the same grounds, but this time she attached exhibits to her motion, including her own affidavit of what transpired during her interactions with Mr. Winter. The second motion to alter or amend was denied by order entered August 30; the court held that the second motion "was not a valid motion, as the previous Rule 59 Motion was denied and therefore the trial court lacks jurisdiction to consider this motion." Ms. Noe appeals, raising the following issues for our review:

1. Did the solid waste board comply with the Tennessee Public Records Act in its handling of Appellant's request for public documents?

2. Are the findings of fact in the trial court's January 6, 2017 Order and final judgment supported by the transcript of the evidence?

## II. STANDARD OF REVIEW

Our standard of review in cases such as this one was set forth by this Court in *Lance v. York:*

> The instant appeal requires us to review the trial court's interpretation of the Tennessee Public Records Act and its determination that it was not violated under the specific facts of this case. It is well settled that, in interpreting statutes, courts must "ascertain and give effect to the legislative

intent without restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State,* 908 S.W.2d 923, 926 (Tenn. 1995). Issues involving construction of a statute and its application to facts involve questions of law. *Memphis Publ'g Co. v. Cherokee Children & Family Servs., Inc.,* 87 S.W.3d 67, 74 (Tenn. 2002). Therefore, the trial court's resolution of these issues is not entitled to the Tennessee Rule of Appellate Procedure 13(d) presumption of correctness on appeal. This Court will review these issues *de novo* and reach our own independent conclusions regarding them. *King v. Pope,* 91 S.W.3d 314, 318 (Tenn. 2002).

359 S.W.3d 197, 201 (Tenn. Ct. App. 2011).

## III. ANALYSIS

The TPRA, set forth in Tennessee Code Annotated section 10-7-101 *et. seq.*, "grants access to records of government agencies throughout the state." *Gautreaux v. Internal Med. Educ. Found., Inc.*, 336 S.W.3d 526, 529 (Tenn. 2011) (citing *Cole v. Campbell,* 968 S.W.2d 274, 275 (Tenn. 1998)). The purpose of the Act "is to promote public oversight of governmental activities." *Id.* (citing *Memphis Publ'g Co. v. Cherokee Children & Family Servs., Inc.* 87 S.W.3d 67, 74 (Tenn. 2002)). As this Court observed in *Taylor v. Town of Lynnville*:

> There is a "presumption of openness" under the TPRA and a "clear legislative mandate favoring disclosure of governmental records." *Schneider* [*v. City of Jackson*], 226 S.W.3d [332,] at 340 [(Tenn. 2007)] (citations omitted). Indeed, the statute requires that "[a]ll state, county and municipal records shall, at all times during business hours ... be open for personal inspection by any citizen of this state." Tenn. Code Ann. § 10-7-503(a)(2)(A). Moreover, unless the requested public record is specifically exempt from disclosure, the records custodian must promptly make it available for inspection. Tenn. Code Ann. § 10-7-503(a)(2)(B).
>
> If it is not practicable for a record to be promptly available for inspection, a records custodian is required to do one of the following within seven business days:
>
>> (i) Make the information available to the requestor;
>> (ii) Deny the request in writing or by completing a records request response form developed by the office of open records counsel. The response shall include the basis for the denial; or
>> (iii) Furnish the requestor a completed records request response form developed by the office of open records

> counsel stating the time reasonably necessary to produce the
> record or information.
>
> *Id.* Failure to respond to a request in the manner described above shall constitute a denial, and the person making the request shall thereafter have a right to bring a petition for access to obtain judicial review. Tenn. Code Ann. § 10-7-503(a)(3); Tenn. Code Ann. § 10-7-505(a).
>
> ***
>
> Although a records custodian has seven business days within which to respond to a records request in one of the three ways listed in Tennessee Code Annotated section 10-7-503(a)(2)(B)(i)-(iii), such manners of response are only available "[i]n the event it is not practicable for the record to be promptly available for inspection." Tenn. Code Ann. § 10-7-503(a)(2)(B). The default understanding of the statute is that a citizen may inspect public records promptly upon request. Any delayed access to nonexempt public records is contingent only on whether such prompt inspection is "practicable." *See id.*

No. M2016-01393-COA-R3-CV, 2017 WL 2984194, at *2-4 (Tenn. Ct. App. July 13, 2017).

This appeal calls for a determination of whether the evidence demonstrates that a prompt access to the records was or was not practicable. *See* Tenn. Code Ann. § 10-7-503(a)(2). Ms. Noe argues that the records she requested were readily available and in the care and custody of Mr. Winter at all pertinent times, and thus, the failure to grant her access to the documents violated the TPRA. In support of her argument, she cites Mr. Winter's response in an email that Tuesday, June 14, "worked best" for Ms. Noe to come by, his testimony at the show cause hearing that he had a paper copy of the draft budget but not the electronic version on June 14 when Ms. Noe came to his office, and his testimony that a paper copy of the May packet was in the office on June 14.[2]

The TPRA does not require that a records custodian make a record available immediately upon receipt of a request; dropping what the custodian is doing at the time of the request to find a record may be impractical. Indeed, Mr. Winter testified that on June 14, he "was trying to put together a packet for the board meeting[,] put together the engineering stuff that hadn't come in[, and t]rying to gather some other information." He

---

[2] In Ms. Noe's reply brief, she also supports this argument with citations to the materials she filed in support of her second motion to alter or amend. The trial court held that it did not have jurisdiction to consider the motion, a holding Ms. Noe does not challenge on appeal. In our resolution of this case, and in deference to the purposes inherent in the TPRA, we have considered the material which she cites.

also testified that when his office manager returned from vacation on June 14, she had "payroll to catch up on, writing the checks," as well as the fact that they were "addressing some other problems[,] . . . a retirement issue[, . . .[w]e're at the end of the year[, . . . and [w]e're doing USI thing."

We have reviewed the record, including the testimony cited by Ms. Noe, and conclude that Mr. Winter's testimony establishes that on June 14, the three documents that Ms. Noe initially sought—the draft budget, the May packet, and the list of potentially commercial landfill users posing as residential users—could easily be located in the office, such that access or an opportunity to inspect them should have been granted.[3] We note that Mr. Winter testified that he showed her his personal copy of the draft budget with his "chicken scratch on it" and that the entire June packet was not available until June 16. It appears that Mr. Winter waited to turn over the records until all of them were available in electronic format, as that was the format Ms. Noe requested for most of the documents.[4] Given their ready availability, access to the May packet and the list of

---

[3] Mr. Winter testified as follows when questioned by Ms. Noe:

> Q. That May Packet was not in a cabinet anywhere?
> A. No. You were asking for the drafts and a couple of other things, electronic version.
> Q. I'm not. I'm asking, was the May Packet out in your office in a filing cabinet?
> A. You weren't wanting hard copies. You were wanting…
> Q. I'm asking, was your packet out in a cabinet in your office, it was the May Packet?
> A. It was in the main office, yes.
> Q. And how far is that from your office?
> A. Probably thirty feet.
> Q. How far is it from Stephanie?
> A. Probably fifteen feet.
> Q. So we're standing there and you're denying documents that are fifteen feet more or less from you and from Stephanie?
> [Objection made by counsel for the Board and overruled.]
> A. At the moment you requested electronic documents.
> Q. Did you advise me you had the paper copies?
> A. I believe so.
> Q. And did I ask to inspect the budget, did I ask to change it to a request for inspection?
> A. As I stated, I did not have but one copy of the budget and it had my personal notes on it.
> ***
> Q. So you had the May Packet that I had asked for, you had the list of individuals . . . reportedly bringing out residential trash which you thought was commercial, was it there also in a cabinet?
> A. Yes.
> Q. And I asked for hard copies of that?
> A. On the 14th, correct.

[4] The written records request form (and the initial email she sent) requested electronic and hard *copies* of those records, not just an opportunity to inspect them. However, Ms. Noe's petition and her testimony reflect that she also requested access to and the right to inspect the records. Included in the right to inspect

6

landfill users discussed in the May meeting was practicable. Mr. Winter's failure to make these documents available for inspection and copying when they were easily accessible in the Board's office when Ms. Noe went to his office three consecutive days prior to the June 17 Board meeting does not fulfill the purpose or requirements of the TPRA.

Accordingly, we reverse the trial court's holding that Mr. Winter made the May packet and the list of landfill users available to Ms. Noe in a practical amount of time. We affirm the trial court's holding with respect to the proposed draft budget, as Mr. Winter showed Ms. Noe his working draft; a copy was also included in the material she received June 22. Although not expressly addressed by the parties, the testimony also makes clear that the full June packet was not available until June 16, and accordingly, the Board complied with the TPRA when Ms. Noe was given the package on June 22. We remand the case for consideration of the relief to be afforded Ms. Noe relative to the May packet and the list of landfill users.[5] Our holding in this regard pretermits our consideration of Ms. Noe's remaining issue on appeal.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed in part and affirmed in part; the case is remanded for further proceedings in accordance with this opinion.

_____
RICHARD H. DINKINS, JUDGE

---

public documents is the right to "take extracts or make copies . . . and photographs" of the record, subject to the record custodian's "reasonable rules governing the making of such extracts, copies, photographs or photostats." Tenn. Code Ann. § 10-7-506(a).

[5] Given that the Board met and approved the budget prior to the show cause hearing, the practical relief sought by Ms. Noe may in fact be *de minimus*.