IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 28, 2011

**STATE OF TENNESSEE v. JEROME NATHANIEL JOHNSON**

**Direct Appeal from the Circuit Courts for Rhea and Maury Counties**
**Nos. 17335, 17336, 17337, 17338, 19685**
**Thomas W. Graham, Judge, and Robert L. Jones, Judge**

_____

**No. E2010-02659-CCA-R10-CD - Filed April 16, 2012**

_____

In this consolidated appeal, the defendant challenges the denial of his requests for pretrial diversion in both Maury County and Rhea County, the denial of his motions for writ of certiorari by the Maury County and Rhea County trial courts, and the denial of his motion for interlocutory appeal by the Rhea County trial court. He also argues that the pretrial diversion statute does not prohibit diversion for more than one offense. After review, we affirm the denials of pretrial diversion and motions for writ of certiorari. We also conclude that the Rhea County trial court should have granted the defendant's motion for interlocutory appeal but such error is of no effect in light of this court's grant of an extraordinary appeal. We further conclude that the pretrial diversion statute does not prohibit diversion for more than one offense charged in the same indictment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Courts Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Michael A. Little, Chattanooga, Tennessee, for the appellant, Jerome Nathaniel Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; J. Michael Taylor and Michael Bottoms, District Attorneys General; and Dan Runde and James W. Pope, III, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

# FACTS

As a result of the defendant's and an associate's engagement in a process of stealing property in Maury County and taking it to Rhea County for disposal, and vice versa, the defendant was charged in Maury County with theft of property over $1000. He was charged in Rhea County with two counts of theft of property valued at least $1000, theft of property valued less than $500, and theft of property valued at least $10,000.

From the record, we glean that the defendant's charge in Maury County resulted from his theft of a ten-foot travel trailer, a turn mower, a push mower, a weed eater, two blowers, two gas cans, and a large roll of trimmer string from Mr. and Mrs. Jason Riley. Jason Riley operated a lawn care business, which the theft of his equipment effectively ended. Maury County authorities conducted a "raid" of the defendant's property on March 3, 2010. After the "raid," the defendant gave a statement to the Maury County police in which he "claim[ed] that he basically pulled a joke on the Rileys and that he took the Riley property to East Tennessee in order to let certain individuals use Riley's mower because 'the Carneys were push mowing their yard.'" However, the Rileys related that the defendant had admitted to them that he had sold their mower for $1100 and taken the remaining property to East Tennessee. The Rileys also related that they had a conversation with the defendant on March 4, 2010, in which the defendant "begged them to keep the matter out of court claiming that he had gotten tied-up with a bad influence."

Apparently, the defendant's charges in Rhea County resulted from his theft of two all-terrain vehicles, an attachment for a tractor, and a tractor from four different victims on three different dates. The defendant was evidently stopped by the police in another county on a routine traffic stop while pulling the stolen tractor but did not admit to the theft at that time. Later, he gave a statement to the Rhea County authorities in which he admitted his involvement in the thefts and "stated that he drove around looking for items to steal in order to make extra money."

The defendant applied for pretrial diversion in both cases. In his applications, the defendant stated that he was a married, thirty-three-year-old male with one child. He attended high school but did not graduate. However, he obtained a GED and attended some college. He later received an Affiliate Broker Certificate from the Tennessee Real Estate Education Service, as well as certificates for training by Advance Auto Parts. The defendant related an employment history starting in 1991, the most recent being his current employment with Penske Logistics where he had worked since 2001. He noted his participation in a variety of organizations and community awards, including having applied as a member of the Better Business Bureau in March 2010. The defendant acknowledged being charged with a traffic violation and failure to appear in Rhea County in 1995 but was

unsure of the disposition. He also noted the pending theft charges against him and admitted that he "unlawfully possessed and removed from the owners all property listed in the . . . indictments."

The defendant was denied pretrial diversion in both counties. In reaching its determination, the Maury County prosecutor found that the facts and circumstances of the case weighed heavily against the grant of diversion and that the defendant's "extensive" criminal activity that spanned two separate jurisdictions did not weigh in the defendant's favor. With respect to the defendant's social history and present condition, the prosecutor noted that, "[f]rom a mental and physical standpoint, [the] defendant would appear to be capable of serving a diversionary term . . . and his social history would seemingly incline toward a grant of diversion." The prosecutor assigned "highly significant and great overriding weight" to the need for deterrence, noting that there was a need for general deterrence to prevent others from being "thieves in the night" as well as specific deterrence to prevent similar conduct by the defendant in the future.

With regard to the defendant's amenability to correction, the Maury County prosecutor found a neutral position but noted that it did not weigh in the defendant's favor. The prosecutor voiced concerns about whether the defendant "has ever truly acknowledged the errors of his ways" and noted that the defendant's statement expressed more regret for getting caught than actual remorse. The prosecutor observed that the evidence showed that the defendant was "a calculating thief as [o]pposed to an individual who happened to take the wrong path one time in an otherwise law abiding life."

The prosecutor further found that "a grant of diversion in this case would absolutely undermine and subvert the interests of justice and the confidence of the public in the justice system." The prosecutor noted that the defendant violated the laws of society as well as the private trust of his own relatives by stealing from them. The prosecutor assigned the "heaviest weight to [the] overarching concerns" of fostering "society's faith in the judicial system, to protect and preserve the interests of the public, and to uphold the interests of justice itself[.]"

The prosecutor next addressed the defendant's attitude and behavior since the arrest and assigned it mild weight toward a grant of diversion because the defendant had maintained his employment and engaged in normal family and work-related activities. The prosecutor also evaluated the defendant's past employment, current drug usage, emotional stability, general reputation, marital status and family responsibility, all of which were given some favorable weight toward the grant of diversion. The defendant's home environment was viewed as neutral.

The Maury County prosecutor ultimately concluded:

In weighing and assessing this particular case, this Office recognizes that there are various factors or considerations that may lend themselves toward a grant of diversion for this applicant. On final balance, however, the facts and circumstances of the case, the principles of deterrence and the need for [the] same, the interests of the public, and, this Office's duty to secure and preserve the ends of justice, all amass to possess the far greater and most significant weight of factors and considerations so as to lead this Office to conclude that this application must respectfully be denied.

In reaching a decision, the Rhea County prosecutor found that the circumstances of the offense did not favor diversion, noting that the thefts were not one-time events and "were motivated by greed and not for necessities of life." Likewise, the prosecutor found that the defendant's criminal history did not favor diversion, observing that he had convictions for speeding, failure to obey traffic instructions, driving on a suspended license, and failure to appear. More importantly, the prosecutor viewed the pending indictment against the defendant in Maury County as being "very similar to the current offenses, and . . . evidenc[ing] a sustained intent to violate the law and a lack of amenability to correction."

The prosecutor determined that the defendant's social history favored diversion, in that he was married and had one child, had furthered his education even though he did not graduate from high school, had been gainfully employed for many years, and had participated in community organizations. The prosecutor noted that the defendant's physical and mental conditions were "unremarkable" and did not "favor or disfavor diversion." The prosecutor found that the deterrent effect of punishment did not favor diversion. The prosecutor noted that the defendant had admitted to five thefts over a six-month period in two counties and that he had a prior record and had been given probation previously. As such, the prosecutor found that "[g]ranting diversion under these circumstances would send the wrong message to others similarly situated and would seriously erode the public's confidence in the criminal justice system."

The prosecutor viewed the defendant's amenability to correction as "a wash." He observed that the defendant had returned some of the stolen items, expressed remorse, and cooperated with the officers, which reflected positively on his amenability to correction. However, the prosecutor also observed that the defendant committed several offenses over a lengthy period of time, did not admit his crime when he first encountered the authorities, only returned the stolen items after that encounter with the authorities, and had prior

convictions and been previously granted probation, which all reflected poorly on his amenability to correction.

The Rhea County prosecutor concluded:

> Based upon the foregoing, I do not believe that placing the defendant on pretrial diversion would serve the ends of justice, nor be in the best interest of both the public and the defendant. The circumstances of the offense and the defendant's criminal history are given great weight by the state. The lack of deterrence is given lesser weight. These factors substantially outweigh the defendant's positive social history, which is also given great weight. Therefore, I must respectfully decline to enter into a memorandum of understanding in this case.

The Rhea County prosecutor also noted that the defendant could not be considered a "qualified defendant" under the pretrial diversion statute for more than one case and that he had filed for diversion in all four of his Rhea County cases, as well as in the Maury County case. The prosecutor noted that the cases pending against him in Rhea County were "separate" and not the result of a single episode. The prosecutor concluded that, because the defendant "can be granted diversion only one time," he could only be considered a "qualified defendant" as to one Rhea County case of the four, assuming he was denied diversion in Maury County.

After his applications for pretrial diversion were denied, the defendant filed petitions for writ of certiorari with both trial courts. Both courts denied the defendant's petition, finding that the respective prosecutors had not abused their discretion. Thereafter, the defendant filed motions with both trial courts for application for an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. The Maury County trial court granted the defendant's motion for application for an interlocutory appeal, which was subsequently granted by this court. However, the Rhea County trial court denied the defendant's motion, after which he filed an application for a Rule 10 extraordinary appeal that was granted by this court. This court consolidated the defendant's cases.

## ANALYSIS

### I. Denial of Pretrial Diversion

Our legislature has provided that the decision to grant pretrial diversion rests within the discretion of the district attorney general. See Tenn. Code Ann. § 40-15-105 (2006); see also State v. Curry, 988 S.W.2d 153, 157 (Tenn. 1999) ("[W]hether to grant pretrial

diversion to a qualified defendant who is statutorily eligible is a determination that lies in the discretion of the district attorney general."). While our legislature has defined a "qualified defendant" as one who meets the statutory requirements set out in Tennessee Code Annotated section 40-15-105(a)(1)(B)(i),[1] the courts have provided additional guidance to prosecutors in determining which defendants, among those who pass the statutory requirements, are most suitable for pretrial diversion. See, e.g., Curry, 988 S.W.2d at 157 ("One who is statutorily eligible is not presumptively entitled to diversion.").

In making this determination, the prosecutor "has a duty to exercise his or her discretion by focusing on a defendant's amenability for correction and by considering all of the relevant factors, including evidence that is favorable to a defendant." State v. Bell, 69 S.W.3d 171, 178 (Tenn. 2002). Among the factors the prosecutor should consider are: (1) the likelihood that pretrial diversion will serve the ends of justice, as well as both the defendant's and the public's interest; (2) the circumstances of the offense; (3) the defendant's criminal record, social history, and physical and mental condition; and (4) the need for general deterrence. State v. Hammersley, 650 S.W.2d 352, 354-55 (Tenn. 1983); see also State v. McKim, 215 S.W.3d 781, 786-87 (Tenn. 2007); Bell, 69 S.W.3d at 176; State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993). In addition, the following factors and circumstances may also be considered to determine if pretrial diversion is warranted: the defendant's attitude and behavior since arrest, home environment, current drug use, emotional stability, employment history, general reputation, marital stability, and family responsibility as well as the attitude of law enforcement. Washington, 866 S.W.2d at 951 (citing State v. Markham, 755 S.W.2d 850, 852-53 (Tenn. Crim. App. 1988)). "[T]he circumstances of the offense and the need for deterrence cannot be given *controlling* weight unless they are of such overwhelming significance that they [necessarily] outweigh all other factors." McKim, 215 S.W.3d at 787 (internal quotations omitted).

---

[1] According to this section, a "qualified defendant" must meet each of the following requirements:

(a) The defendant has not previously been granted pretrial diversion under the provisions of this chapter or judicial diversion under the provisions of § 40-35-313;

(b) The defendant does not have a prior misdemeanor conviction for which a sentence of confinement is served or a prior felony conviction within a five-year period after completing the sentence or probationary program for such prior conviction; and

(c) The offense for which the prosecution is being suspended is not a Class A or Class B felony or a Class C felony as defined in subdivision (a)(1)(B)(iii), a sexual offense, driving under the influence of an intoxicant as prohibited by § 55-10-401, or vehicular assault as prohibited by § 39-13-106.

Although it is the defendant's responsibility to demonstrate suitability for pretrial diversion, the prosecutor is not relieved from the obligation to examine and consider all relevant factors. Bell, 69 S.W.3d at 177. In fact, when denying pretrial diversion the prosecutor must discuss in writing all relevant factors considered and the weight attributed to each factor. Id.; Curry, 988 S.W.2d at 157. Moreover, the prosecutor's written denial statement must identify any factual discrepancies between the evidence relied upon by the prosecutor and the evidence presented by the defendant. Curry, 988 S.W.2d at 157. Failure to consider and articulate all of the relevant factors constitutes an abuse of discretion. See id.

## A. Maury County Denial of Diversion

The defendant challenges the Maury County prosecutor's denial of diversion. Specifically, he asserts that the prosecutor did not adequately consider and weigh his amenability to correction or other evidence favorable to him, but instead placed heavy emphasis on the nature and circumstances of the offense. However, the record shows that the prosecutor considered and weighed all of the appropriate factors and that the defendant is simply dissatisfied with the outcome.

As laid out above, the Maury County prosecutor ultimately concluded that the facts and circumstances of the case, the principles of and need for deterrence, the interests of the public and duty to secure and preserve the ends of justice outweighed the factors in favor of diversion. Specifically, with regard to the facts and circumstances of the offense, the prosecutor noted that the defendant specifically targeted the victims, planned the offense, and was not candid with law enforcement. The prosecutor noted that, although the defendant was only indicted for one offense in Maury County, the prosecutor "d[id] not believe that [he] must turn a blind eye to all of that which indicates that this defendant was engaged in a protracted, multi-jurisdictional, criminal enterprise."

Specifically, with regard to the need for deterrence, the prosecutor observed that there were both general and specific prongs to the concept of deterrence, and that the grant of diversion in this case would "absolutely undercut the concept of general deterrence." The prosecutor noted that there was "no lack of theft cases in the 22nd Judicial District" and that others similarly situated as the defendant needed to be deterred from converting the property of others to their own use. The prosecutor also noted that the defendant needed to be deterred to ensure that he would not reoffend, as he had been involved in "offenses spann[ing] two jurisdictions, multiple victims, and thousands of dollars worth of property." The prosecutor observed that the defendant had "stolen to foster his own ends" and proven that he had "little regard for the property rights of others."

Specifically, with regard to justice and the interests of the public and the defendant, the prosecutor observed that a grant of diversion "would certainly be a boon for th[e] defendant" but would "absolutely undermine and subvert the interests of justice and the confidence of the public in the justice system." The prosecutor noted that the public deserved active prosecution in such cases because, otherwise, a "woeful message" would be sent that major thefts would not be prosecuted. The prosecutor also noted that the defendant violated the private trust of his own relatives in that the victims were relatives of his wife and that they deserved that their trust be mended through prosecution.

Even though the prosecutor found the aforementioned factors to be most controlling, he also addressed all other relevant considerations. As to the defendant's criminal record, the prosecutor noted that, although the defendant did not "have any disqualifying prior convictions," he was under indictment in Rhea County for four similar theft offenses. The prosecutor determined that he could not view the defendant's criminal record in the defendant's favor because the defendant's "criminal activity is extensive [and] spanning two separate jurisdictions[.]"

As to the defendant's social history and present condition, the prosecutor noted, in favor of diversion, the defendant's history of education and other training, as well as his ties to the community and family life. The prosecutor also noted in the defendant's favor the defendant's attitude and behavior since the arrest, his past employment, lack of drug use, emotional stability, general reputation, and marital status. Specifically, the prosecutor observed, among other things, that the defendant had been working and engaging in normal activities since his arrest, had been steadily employed since 1991, owned his own business, participated in organizations and community-minded endeavors, had not and was not currently abusing drugs, appeared to be emotionally stable, provided favorable references, and appeared to have a stable marriage and family responsibility. The prosecutor viewed the defendant's home environment as neutral because he had no specific knowledge of "the daily life within [the] defendant's family."

As to the defendant's amenability to correction, the prosecutor took a neutral position. He noted that the defendant's social and employment history inclined toward a grant of diversion but that the defendant had never "truly acknowledged the errors of his ways [and] describe[d] his criminal offense as more or less being a 'joke[.]'" The prosecutor surmised that the remorse expressed by the defendant was actually "more 'regrets' for being caught." The prosecutor noted that the defendant's offense "was committed [by] a mature adult who consciously opted on a number of occasions to engage in felonious behavior."

Again, the record shows that, contrary to the defendant's assertion, the prosecutor addressed and weighed all considerations, including those favoring diversion. The

defendant argues that the language used by the prosecutor in assigning weight to certain factors, e.g., "seemingly incline toward," "may be viewed," and "may incline toward," did not articulate the weight given to the factors. We disagree. Even though the prosecutor did not consistently use such blatant terms as "great" or "slight," the factors weighing for and against diversion, as well as the relative weight he assigned to each, were evident throughout the denial. We conclude that the Maury County prosecutor did not abuse his discretion in denying diversion.

## B. Rhea County Denial of Diversion

The defendant also challenges the Rhea County prosecutor's denial of diversion. He asserts that the prosecutor failed to focus on his "amenability for correction by not considering evidence favorable to [him]" and weighing such factors "heavily in [his] favor[.]" He also argues that the prosecutor erred in considering the pending charge against him in Maury County as part of his "criminal history" instead of only looking at his "criminal record." Additionally, the defendant argues that the prosecutor failed to consider such favorable factors as his post-arrest behavior, home environment, general reputation, marital stability, and family responsibility. See Markham, 755 S.W.2d at 852-53.

In determining whether the defendant should be granted pretrial diversion, the prosecutor found that the circumstances of the offense did not favor diversion. The prosecutor noted that the defendant stole over $25,000 worth of equipment, which was located in close proximity to the victims' homes, and that the thefts occurred on three dates over an eight-day period. The prosecutor observed that the defendant was educated and gainfully employed at the time of the offenses and that his actions were "motivated by greed and not for necessities of life." The prosecutor also observed that the defendant was not forthcoming with the police because he was stopped while pulling the stolen tractor "but did not admit to the theft at that time."

The prosecutor also found that the defendant's criminal history did not favor diversion, noting that the defendant had three speeding convictions, as well as convictions for failure to obey traffic instructions, driving on a suspended license, and failure to appear. The prosecutor noted that, more significantly, the defendant had a pending indictment against him in Maury County for theft of property over $1000. The prosecutor observed that the similar Maury County offense evidenced that the defendant had "a sustained intent to violate the law and a lack of amenability to correction."

The prosecutor found that the defendant's social history favored diversion, noting that he was married with a child and, although not completing high school, had furthered his

education. He also noted that the defendant had been gainfully employed for several years and participated in community organizations.

The prosecutor found that the defendant's physical and mental conditions were "unremarkable" and neither favored nor disfavored diversion.

The prosecutor found that the deterrent effect of punishment did not favor diversion, noting that the defendant admitted to five thefts over a six-month period in two counties, and that he also had a prior record and had been given probation previously. The prosecutor observed that, "[g]ranting diversion under these circumstances would send the wrong message to others similarly situated and would seriously erode the public's confidence in the criminal justice system."

The prosecutor found that the defendant's amenability to correction was "a wash." The prosecutor noted that the defendant returned some of the stolen items, expressed remorse and cooperated with officers, which reflected positively on his amenability to correction. However, the prosecutor also noted, as reflecting negatively on the defendant's amenability to correction, that the defendant committed several offenses over a lengthy period of time, did not admit his crimes when he first encountered the authorities and only returned items after that encounter, had prior convictions and been previously given probation, and that the Maury County crime was not solved until the defendant was arrested on the Rhea County offenses.

The prosecutor determined that granting the defendant pretrial diversion would not serve the ends of justice or be in the best interest of both the public and the defendant. The prosecutor gave great weight to the circumstances of the offense and the defendant's criminal history, and a lesser weight to the deterrent effect of punishment. The prosecutor gave great weight to the defendant's social history in favor of diversion but determined that it was substantially outweighed by the factors against diversion.

The prosecutor's written denial clearly shows that the prosecutor considered the defendant's amenability to correction but determined, although there were some actions by the defendant demonstrating amenability to correction, there were other actions that reflected negatively on his amenability to correction. In addition, the denial shows that the prosecutor did not deny diversion solely on the pending charge against the defendant in Maury County. Furthermore, the prosecutor's discussion of the defendant's social history implicitly included consideration of some of the Markham factors, particularly the defendant's marital and family life. Moreover, a panel of this court has recently observed that "recent Tennessee Supreme Court cases indicate that the prosecutor is under no obligation to consider all of the factors in Markham." State v. Charlotte McCarter, No. E2010-02127-CCA-R10-CD, 2011

-10-

WL 5826013, at *8 (Tenn. Crim. App. Nov. 18, 2011) (citing McKim, 215 S.W.3d at 786-87; Bell, 69 S.W.3d at 176). In sum, the evidence shows that the prosecutor clearly focused on factors relevant to the defendant's amenability to correction and determined that the defendant was not a good candidate for diversion. We conclude that the Rhea County prosecutor did not abuse his discretion in denying diversion.

## II. Denials of Writ of Certiorari

The defendant argues that both trial courts erred in denying his petitions for writ of certiorari, asserting that both courts should have found that the respective prosecutor abused his discretion.

If the prosecutor denies a defendant's application for pretrial diversion, the defendant may appeal to the trial court for a writ of certiorari. Tenn. Code Ann. § 40-15-105(b)(3). The trial court reviews the prosecutor's decision under an abuse of discretion standard, id., and the prosecutor's decision is "presumptively correct." Curry, 988 S.W.2d at 157-58. On review, the evidence considered by the trial court is limited to that considered by the prosecutor, and the trial court only determines whether the prosecutor considered all of the relevant factors and whether substantial evidence existed to support the denial of diversion. Bell, 69 S.W.3d at 177; see also Hammersley, 650 S.W.2d at 353. The trial court may not reweigh the evidence or substitute its view for that of the prosecutor. Id. at 179. The trial court may conduct a hearing but "only to resolve any factual disputes raised by the district attorney general or the defendant." Id. (citing Curry, 988 S.W.2d at 158). Appellate review is confined to a determination of whether the trial court's decision is supported by a preponderance of the evidence. Curry, 988 S.W.2d at 158; State v. Pinkham, 955 S.W.2d 956, 960 (Tenn. 1997).

The Maury County trial court found no abuse of discretion by the prosecutor, noting that the prosecutor had "considered and adequately weighed all relevant factors, both favorable and unfavorable to [the] [d]efendant."

The Rhea County trial court found no abuse of discretion by the prosecutor. The court observed that the prosecutor "addressed all factors and compared them to the evidence in the case." The court noted that the defendant's "past convictions and his numerous pending theft indictments for which he has made admissions remove any doubt that the District Attorney General made a proper decision under the law."

We have reviewed the record and it is clear that both prosecutors carefully weighed and considered the factors relevant to the determination of whether to grant pretrial diversion, including factors weighing for and against the defendant. The trial courts'

findings necessarily imply that substantial evidence existed to support the denials of diversion. We conclude that the evidence does not preponderate against the trial courts' denials of writ of certiorari.

### III. Denial of Interlocutory Appeal by Rhea County Trial Court

The defendant argues that the Rhea County trial court erred in denying his motion for an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. Rule 9 states, in pertinent part:

> In determining whether to grant permission to appeal, the following, while neither controlling nor fully measuring the courts' discretion, indicate the character of the reasons that will be considered: (1) the need to prevent irreparable injury, giving consideration to the severity of the potential injury, the probability of its occurrence, and the probability that review upon entry of final judgment will be ineffective; (2) the need to prevent needless, expensive, and protracted litigation, giving consideration to whether the challenged order would be a basis for reversal upon entry of a final judgment, the probability of reversal, and whether an interlocutory appeal will result in a net reduction in the duration and expense of the litigation if the challenged order is reversed; and (3) the need to develop a uniform body of law, giving consideration to the existence of inconsistent orders of other courts and whether the question presented by the challenged order will not otherwise be reviewable upon entry of final judgment. Failure to seek or obtain interlocutory review shall not limit the scope of review upon an appeal as of right from entry of the final judgment.

Tenn. R. App. P. 9(a).

The defendant sought interlocutory review on (1) the need to prevent irreparable injury, in that he would likely be convicted of four counts of theft of property, and he could not appeal the denial of diversion on an appeal as of right;[2] (2) the need to prevent needless, expensive, and protracted litigation, asserting that needless litigation would be avoided if the prosecutor's denial of diversion was reversed and he was granted diversion; and (3) the need to develop a uniform body of law, in that the prosecutor found that the defendant was not a "qualified defendant" for more than one case. The trial court denied the defendant's

---

[2] On appeal, the defendant admits that his assertion he would not have been able to appeal the denial of diversion on an appeal as of right was incorrect.

-12-

motion without elucidating reasons for the denial. However, in a hearing held prior to the trial court's issuance of the written denial, the court stated:

> I think it ought to be taken up to the Court of Appeals. I – if every diversion when it was denied got an automatic appeal to the Court of Appeals, just filing the diversion would delay by a year and a half, two years every criminal case we have. So I can't see appro – of course, you can . . . make the application also of the Court of Appeals. I'm denying any interlocutory appeal on a diversion because it delays the prosecution for a long period of time. . . .

> . . . .

> [T]here probably should be something in the record responding to his . . . actual allegations in his motion . . . so it won't look quite so just ill considered. You know, if you just want to put a couple of sentences together in response to the three bases he says are the basis of appeal. Maybe that's the best way to do that and then I'll rule on it.

> . . . .

> [I] haven't [read it] either, I just glanced at it. We probably ought to do you that courtesy. I'm just telling you . . . my thinking is there is not going to be sufficient grounds to grant an interlocutory appeal, but I will give you the last benefit of at least me reading this slowly and letting the DA look at it also.

We conclude that the Rhea County trial court should have granted the interlocutory appeal because of the need for developing a uniform body of law regarding the proper interpretation of a "qualified defendant" under Tennessee Code Annotated section 40-15-105(a)(1)(B)(i), in a unique case such as this where there are multiple charged offenses in more than one county. Such error, however, was of no effect in the case given this court's grant of an extraordinary appeal.

## IV. Pretrial Diversion Statute

The defendant argues that the pretrial diversion statute does not preclude defendants who have been charged with more than one offense from being eligible for pretrial diversion. The defendant raises this argument because the Rhea County prosecutor stated in his denial that it was his opinion that the defendant could only be considered a "qualified defendant" as to one of the Rhea County cases and that was assuming he was not granted

pretrial diversion on the Maury County case. The prosecutor's entire statement on this issue was as follows:

> Irrespective of the above, it is the [S]tate's position that the defendant is not a "qualified defendant" under the pretrial diversion statute for more than one case. The defendant has filed for diversion in all four Rhea County cases and in the Maury County case, which is in a different jurisdiction. A defendant can be granted diversion only one time. Defendant has four separate cases pending. These cases were not the result of a single episode. Thus, the defendant is a "qualified defendant" as to one Rhea County case only, assuming he has not been granted diversion in Maury County.

As support for his position, the defendant cites Tennessee Code Annotated section 40-15-105(a)(3), in which the plural words "offenses" and "charges" are used.

Section 40-15-105(a)(3) states, in part:

> The memorandum of understanding shall also include a statement of the defendant's version of the facts of the alleged *offenses*. The defendant's statement of the facts relative to the charged *offenses* shall not be admissible as substantive evidence in any civil or criminal proceeding against the defendant who made the statement. . . . No other confession or admission of the defendant obtained during the pendency of and relative to the *charges* contained in the memorandum of understanding shall be admissible in evidence for any purpose, other than cross-examination of the defendant.

Id. (emphasis added).

The statutory provision setting forth whether a defendant is a "qualified defendant" for purposes of eligibility for pretrial diversion defines a "qualified defendant" as one who "has not previously been granted pretrial diversion under this chapter or judicial diversion under § 40-35-313[.]" Tenn. Code Ann. § 40-15-105(a)(1)(B)(i)(a). When interpreting a statute,

> we "must first ascertain and then give full effect to the General Assembly's intent and purpose" in drafting those sections. Waldschmidt v. Reassure Am. Life Ins. Co., 271 S.W.3d 173, 176 (Tenn. 2008). Our chief concern is to carry out the legislature's intent without unduly broadening or restricting the statute. Houghton v. Aramark Educ. Res., Inc., 90 S.W.3d 676, 678 (Tenn. 2002) (quoting Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995)). We

-14-

presume that every word in a statute has meaning and purpose and should be given full effect if so doing does not violate the legislature's obvious intent. In re C.K.G., 173 S.W.3d 714, 722 (Tenn. 2005). When the statutory language is clear and unambiguous, we simply apply its plain meaning. Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004). When a statute is ambiguous, however, we may refer to the broader statutory scheme, the history of the legislation, or other sources to discern its meaning. Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827, 836 (Tenn. 2008). We presume that the General Assembly was aware of its prior enactments and knew the state of the law at the time it passed the legislation. Owens, 908 S.W.2d at 926.

State v. Casper, 297 S.W.3d 676, 683 (Tenn. 2009).

It is our opinion that the plain language of the statute is clear that a defendant can only be granted diversion on one occasion. Thus, if the defendant had been granted diversion in Maury County, he would not have been eligible for diversion in Rhea County, and vice versa, because, upon being granted diversion in one county, he would no longer be one who "has not previously been granted pretrial diversion." Tenn. Code Ann. § 40-15-105(a)(1)(B)(i)(a). However, we are of the opinion that the prior precedents of our courts indicate that a defendant can be eligible for pretrial diversion for multiple offenses arising out of the same indictment. See State v. Harris, 953 S.W.2d 701, 705 (Tenn. Crim. App. 1996) (holding that judicial diversion was available to a statutorily eligible defendant charged with multiple offenses – three drug sales that took place on three different dates).[3]

Moreover, the purpose of pretrial diversion is to "spar[e] a selected defendant the stigma, embarrassment and expense of trial[,]" in addition to providing the offender the means to be restored fully to useful and productive citizenship. State v. Porter, 885 S.W.2d 93, 95 (Tenn. Crim. App. 1994) (internal quotation omitted). "This purpose would be thwarted if [pretrial] diversion was denied to those defendants who had never received the opportunity to reform yet were charged with multiple offenses." Harris, 953 S.W.2d at 705. Therefore, we conclude that the defendant was a "qualified defendant" with regard to all of his Rhea County cases, assuming he had not already been granted diversion in his Maury County case.

Regardless, neither prosecutor denied pretrial diversion due to ineligibility. The defendant was denied pretrial diversion in Maury County based on the facts and

---

[3] "Tennessee courts have recognized the similarities between judicial diversion and pretrial diversion and, thus, have drawn heavily from the case law governing pretrial diversion to analyze cases involving judicial diversion." State v. Cutshaw, 967 S.W.2d 332, 343 (Tenn. Crim. App. 1997).

circumstances of the case, the need for deterrence, and because pretrial diversion would not serve the ends of justice or be in the best interest of both the public and the defendant. The Maury County prosecutor discussed the pending charges against the defendant in Rhea County but only for purposes of discussing his criminal activity.

The defendant was denied pretrial diversion in Rhea County based on the facts and circumstances of the case, the defendant's criminal history, need for deterrence, and because pretrial diversion would not serve the ends of justice or be in the best interest of both the public and the defendant. The Rhea County prosecutor did take, what we have determined to be, the incorrect position that the defendant could not be considered a "qualified defendant" for more than one case, but the prosecutor had already elucidated his reasons for denying diversion.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the denials of pretrial diversion and motions for writ of certiorari. We also conclude that the Rhea County trial court should have granted the defendant's motion for interlocutory appeal, but such error is of no effect in light of this court's grant of an extraordinary appeal. We further conclude that the pretrial diversion statute does not prohibit diversion for more than one offense charged in the same indictment.

_____
ALAN E. GLENN, JUDGE