IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
February 3, 2026 Session

## STATE OF TENNESSEE v. JAMES LEE DENNIS

**Appeal from the Circuit Court for Dyer County**
No. 24-CR-11     Mark L. Hayes, Judge
_____

### No. W2025-00492-CCA-R3-CD
_____

The Defendant, James Lee Dennis, pled guilty to vehicular homicide by intoxication. After a sentencing hearing, the trial court entered judgment ordering the Defendant to serve ten years' incarceration at one hundred percent service. The trial court also ordered the Defendant to pay $113,700 in the form of child maintenance restitution pursuant to Tennessee Code Annotated section 39-13-219. On appeal, the Defendant argues that the trial court erred by ordering excessive restitution and by imposing a sentence above the minimum required by law. Following our review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

STEVEN W. SWORD, J., delivered the opinion of the court, in which KYLE A. HIXSON and MATTHEW W. WILSON, JJ., joined.

Jason R. Creasy, Dyersburg, Tennessee, for the appellant, James Lee Dennis.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin L. Barker, Assistant Attorney General; Danny Goodman, Jr., District Attorney General; and Matthew A. Beaird, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.     FACTS AND PROCEDURAL HISTORY

On August 25, 2023, the Defendant drove a motor vehicle while under the influence of alcohol, striking a motor vehicle being driven by the victim, Shawn Stewart, resulting in the victim's death. A Dyer County grand jury indicted the Defendant on February 12,

2024, for one count of vehicular homicide by intoxication and one count of vehicular homicide by reckless conduct.

## A.  GUILTY PLEA

On January 7, 2025, the Defendant and the State entered a partial plea agreement wherein the Defendant pled guilty to vehicular homicide by intoxication, the State dismissed the charge of vehicular homicide by reckless conduct, and there was no agreement as to the appropriate sentence.  During the guilty-plea submission hearing, the parties stipulated the following facts.

On the night of August 24, 2023, the Defendant consumed alcoholic beverages with friends in Blytheville, Arkansas.  The Defendant slept at a friend's house that night.  Around 5:00 a.m. the next morning, the Defendant awoke and began driving toward his home in Dyer County, Tennessee.  He entered the northbound lane of Interstate 155 heading in the wrong direction.  He traveled for over six miles before he reached the Mississippi River Bridge in Dyer County.

The victim was traveling northbound in the correct lane of travel when his vehicle was struck nearly head-on by the vehicle being driven by the Defendant at 5:40 a.m.  Another vehicle, which had been traveling behind the victim's vehicle, then struck the victim's car a second time.  The victim died at the scene.  A blood sample taken from the Defendant at 7:12 a.m. revealed a blood alcohol concentration of 0.281.  The victim and the third driver tested negative for all substances.

The trial court accepted the Defendant's guilty plea, scheduled the matter for a sentencing hearing on March 4, 2025, and remanded the Defendant into custody.

## B.  SENTENCING HEARING

At the beginning of the sentencing hearing, the trial court indicated that it had reviewed the presentence report prepared by the Tennessee Department of Correction and a presentence report prepared by Westate Corrections Network.  The parties agreed that the relevant financial information regarding the child maintenance issue was contained in an affidavit submitted by Mrs. Stewart, the victim's wife and mother of his two minor children.  The affidavit was placed under seal to protect the privacy of the victim's family.  The parties further agreed that the Defendant was a Range I, standard offender, with a range of eight to twelve years' mandatory incarceration and no eligibility for early release or sentence reductions.  *See* Tenn. Code Ann. § 40-35-501(bb).

The State presented testimony from Assistant District Attorney General Daniel Rogers from the State's Child Support Division. Mr. Rogers compared the Tennessee child support statute, which delineates guidelines for the setting of child support required of a non-custodial parent, to Tennessee Code Annotated section 39-13-219 (the child maintenance restitution statute), which provides for restitution in the form of child maintenance to the minor children of a victim of vehicular homicide by intoxication. He opined that "the Tennessee [c]hild [s]upport [g]uidelines would be congruent with this statute." *See* Tenn. Code Ann. § 36-5-101 *et seq.* Specifically, he cited the child maintenance restitution statute's inclusion of the financial needs and resources of the child, the financial needs and resources of the surviving parent or guardian, the standard of living the child is accustomed to, and reasonable childcare expenses of the surviving parent or guardian, as being congruent with the child support guidelines. However, he acknowledged that the child support guidelines were "not exactly the same" as the factors listed in the child maintenance restitution statute. The trial court found that consideration of expert testimony concerning the application of the child support guidelines in this case "may well be helpful" in determining the appropriate amount of restitution under the child maintenance statute and allowed Mr. Rogers to testify as an expert in child support calculations over the Defendant's objection.

Mr. Rogers testified that he considered the financial information provided by Mrs. Stewart, including the victim's income, Mrs. Stewart's income, reported childcare expenses, and insurance costs. After calculating that Mrs. Stewart would have custody of the children every day due to the death of the children's father, he determined that the monthly obligation under the child support guidelines would be $1,768. He did not calculate child support obligations using the Defendant's income.

Christian Hale testified that he was driving to work on Interstate 155 the morning the victim was killed. He was traveling behind the victim's car when the Defendant, driving in the wrong direction, struck the victim's car head-on. Mr. Hale locked up his brakes, but his "vehicle hit something." He did not know what he hit. Mr. Hale went to the victim's car and saw that the victim was unconscious. He was unable to open the victim's door or to revive the victim. He then went to the Defendant's vehicle, where he saw the Defendant was conscious but not responding to him.

Mr. Hale then noticed that the victim's car started to burn. He attempted to put out the fire with a fire extinguisher, unsuccessfully, and tried to pull the victim from the car. The car became engulfed in flames, and the victim's body was burned to the point that he had to be officially identified using past medical records. Mr. Hale reported that he suffered injuries to his hand and neck. His arms felt like they were sunburned, presumably from the fire. He also testified that he currently suffered from anxiety from the incident, had nightmares about the wreck, had difficulty with loud "bangs," and had to leave his job

because it required him to drive past the scene twice each day and because there were many loud "bangs" where he worked.

The State introduced photos of the victim's car and body at the scene through Steven Sutton, a death investigator with the Dyer County Medical Examiner's Office. He testified that the victim was identified by using X-rays of pins from a prior reconstructive surgery. Mr. Sutton also testified about the trauma he experienced while working on the case.

An affidavit signed by Mrs. Stewart outlining the family's financial history and expenses was introduced and placed under seal by the trial court. The Defendant stipulated that the affidavit was "fair and accurate." Mrs. Stewart also testified during the sentencing hearing. She described how the victim's death greatly impacted her life and the lives of their children.

The Defendant submitted letters of support and made a statement by allocution.

At the conclusion of the proof, the State argued that three enhancement factors under Tennessee Code Annotated section 40-35-114 applied: (3) the offense involved more than one victim, (6) the personal injuries or amount of damage were particularly great[1], and (10) the defendant had no hesitation about committing a crime when the risk to human life was high. *See* Tenn. Code Ann. § 40-35-114(3), (6), (10). The State also requested restitution for child maintenance in accordance with the child support guidelines. The Defendant argued that enhancement factor (6) did not apply because it was incorporated in the elements of the crime itself. He also argued that factor (3) did not apply because there was only one victim of the offense, and factor (10) did not apply because there was some indication the Defendant hesitated before driving under the influence in that he spent part of the night at a friend's house. The Defendant presented no mitigating factors.

The trial court held that enhancement factor (1) applied because the Defendant had a prior assault, but the trial court gave it "very, very little weight." *Id*. § 40-35-114(1). The trial court also found that enhancement factor (6) was applicable because the injuries inflicted upon the victim and damage to property were particularly great. *Id.* § 40-35-114(6). The trial court did not discuss this factor further. Finally, the trial court applied enhancement factor (10), finding that the Defendant had no hesitation about committing a crime when the risk to human life was high. *Id.* § 40-35-114(10). The trial court discussed how the Defendant drove six miles on the wrong side of an interstate, traveling in excess of seventy miles per hour. The trial court then sentenced the Defendant to serve ten years

---

[1] The State did not argue that the victim suffered damage to his property, although the victim's car was destroyed. The State only discussed the victim's physical injuries and Mr. Hale's emotional trauma.

in the Tennessee Department of Correction, suspended his driving privileges for ten years, and took the child maintenance restitution issue under advisement.

## C. CHILD MAINTENANCE RESTITUTION

On March 12, 2025, the trial court issued a written order regarding restitution. The trial court addressed the factors set forth in the child maintenance restitution statute and applied them to the facts of this case. The trial court ordered the Defendant to pay $500 per month in child maintenance restitution for the oldest child for 105 months and $400 per month for the youngest child for 153 months. The total child maintenance restitution ordered was $113,700.

The Defendant filed a timely notice of appeal.

## II.    ANALYSIS

The Defendant raises two issues on appeal. First, he argues that the trial court erred by ordering the Defendant to pay $113,700 in child maintenance restitution. Second, he argues that the trial court erred in sentencing the Defendant above the minimum sentence of eight years by misapplying an enhancement factor. We will address each issue in the order in which it was raised on appeal.

## A. CHILD MAINTENANCE RESTITUTION

The Defendant claims that the trial court erred by setting an excessive amount of child maintenance restitution pursuant to Tennessee Code Annotated section 39-13-219 because the State "bears the burden of proving restitution" and it failed to present any proof regarding the financial needs of the children, the standard of living to which each child was accustomed, the physical and emotional needs of the children, the educational needs of the children, or that the children were in need of additional support and maintenance. *See id*. § 39-13-219. The Defendant further argues that the trial court failed to consider the Defendant's financial resources and ability to pay. The State argues that the trial court did not abuse its discretion in setting the amount of child maintenance restitution. We agree with the State.

A reviewing court must first determine the appropriate standard of review to apply to any issue. *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). As the parties acknowledge, this court's consideration of the child maintenance restitution statute in this case presents a matter of first impression. Therefore, we will explore in some detail the appropriate standard of appellate review. The State urges this court to apply an abuse of discretion standard with a presumption of reasonableness, following *State v. Cavin*, 671 S.W.3d 520

(Tenn. 2023), which discussed restitution in criminal matters as a condition of probation pursuant to the general restitution statute codified at Tennessee Code Annotated section 40-35-304. The Defendant does not specifically address the standard of review and only cites to *Cavin* for the position that the "State bears the burden of proving restitution in criminal cases."

It is well established that we review a trial court's sentencing determinations for abuse of discretion. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The Tennessee Supreme Court has further held "that the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, *including the questions related to probation or any other alternative sentence*." *State v. Caudle*, 388 S.W.3d 273, 278-279 (Tenn. 2012) (emphasis added). A defendant convicted of vehicular homicide under Tennessee Code Annotated section 39-13-213(a)(2) is not eligible for probation. *See* Tenn. Code Ann. § 40-35-303(a) (2021); *see also* Tenn. Code Ann. § 40-35-501(bb). Since the child maintenance statute applies only when a defendant is sentenced for vehicular homicide, it cannot be considered as an alternative sentence to incarceration. However, *Caudle's* logic still prevails. "As stated in *Bise*, 'when the 2005 amendments vested the trial court with broad discretionary authority in the imposition of sentences, de novo appellate review and the "presumption of correctness" ceased to be relevant.'" *Caudle*, 388 S.W.3d at 279 (quoting *Bise*, 380 S.W.3d at 708). Our appellate courts have now applied the *Bise* abuse of discretion standard in sentencing issues involving the length of the sentence, *see Bise*, 380 S.W.3d at 708; the manner of the sentence, *see Caudle*, 388 S.W.3d at 278-79; consecutive sentences, *see State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013); the granting or denial of judicial diversion, *see State v. King*, 432 S.W.3d 316, 325 (Tenn. 2014); misdemeanor sentencing, *see State v. Hampton*, No. W2018-00623-CCA-R3-CD, 2019 WL 1167807, at *12 (Tenn. Crim. App. Mar. 12, 2019) (citing cases), *no perm. app. filed*; general restitution, *see Cavin*, 671 S.W.3d at 528; and offender range classification, *see State v. Tomes*, No. E2023-01831-CCA-R3-CD, 2025 WL 3171857, at *10 (Tenn. Crim. App. Nov. 10, 2025) (citing cases), *no perm app. filed*.

We see no difference between restitution as a condition of probation and child maintenance restitution in determining the standard of review. Therefore, we conclude that the appropriate standard of review of a trial court's order for restitution pursuant to the child maintenance restitution statute is abuse of discretion with a presumption of reasonableness. A trial court abuses its discretion in the context of sentencing determinations by applying an incorrect standard of law or reaching a decision contrary to logic or reasoning that causes prejudice to the complaining party. *State v. Bonds*, 502 S.W.3d 118, 166 (Tenn. Crim. App. 2016) (citing *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997)). The burden is upon the appealing party to show that the trial court abused

its discretion.  *See State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991) (citing Tenn. Code Ann. §40-35-401, Sentencing Comm'n Cmts.).

The child maintenance restitution statute became effective on July 1, 2023, fifty-three days prior to the offense in this case.  The statute states in relevant part:

(a) Notwithstanding any law to the contrary, if a defendant is convicted of a violation of [Tennessee Code Annotated section] 39-13-213(a)(2) . . . and the deceased victim of the offense was the parent of a minor child, then the sentencing court shall order the defendant to pay restitution in the form of child maintenance to each of the victim's children until each child reaches eighteen (18) years of age and has graduated from high school, or the class of which the child is a member when the child reached eighteen (18) years of age has graduated from high school.

(b) The court shall determine an amount that is reasonable and necessary for the maintenance of the victim's child after considering all relevant factors, including:
   (1) The financial needs and resources of the child;

   (2) The financial resources and needs of the surviving parent or guardian of the child, including the state if the child is in the custody of the department of children's services;

   (3) The standard of living to which the child is accustomed;

   (4) The physical and emotional condition of the child and the child's educational needs;

   (5) The child's physical and legal custody arrangements; and

   (6) The reasonable work-related child care expenses of the surviving parent or guardian.

. . . .

(d)(1) If a defendant who is ordered to pay child maintenance under this section is incarcerated and unable to pay the required maintenance, then the defendant must have up to one (1) year after the release from incarceration to begin payment, including entering a payment plan to address any arrearage.  If a defendant's child maintenance payments are set to terminate

but the defendant's obligation is not paid in full, then the child maintenance payments continue until the entire arrearage is paid.

(2) Notwithstanding [Tennessee Code Annotated section] 40-35-304 [the general restitution provision as a condition of probation], a surviving parent or guardian who is awarded restitution pursuant to this section may convert the restitution order to a civil judgment at any time by filing a certified copy of the restitution order with an appropriate civil court having jurisdiction over the total amount of restitution ordered. The civil court may convert the restitution order into a civil judgment in the manner provided in [Tennessee Code Annotated section] 40-35-304(h).

(e)(1) If the surviving parent or guardian of the child brings a civil action against the defendant prior to the sentencing court ordering child maintenance payments as restitution and the surviving parent or guardian obtains a judgment in the civil suit, then any maintenance ordered must be offset by the amount of damages that has been received by the surviving parent or guardian prior to the sentencing court entering an order of restitution.

(2) If the court orders the defendant to make child maintenance payments as restitution under this section and the surviving parent or guardian subsequently brings a civil action and obtains a judgment, then the child maintenance order must be offset by the amount of damages received by the surviving parent or guardian pursuant to the civil action.

Tenn. Code Ann. § 39-13-219.

We find that the trial court applied the correct legal standard by following the child maintenance restitution statute. The trial court cited the statute seven times in its well-reasoned, two-and-a-half-page order and examined the factors set forth therein. The order outlined the standard of living to which the children were accustomed by examining the family income for the last eighteen months of the victim's life. The trial court's order also addressed the financial needs and resources of the children by examining funds received through a life insurance policy, social security payments for each child, the amount of lost income due to the victim's death, and "ongoing resources available to the children." The trial court offset the amount of child maintenance restitution by considering funds received by the surviving parent through a wrongful death settlement in accordance with subsection (e)(1). The trial court also determined that "[t]he older child ha[d] somewhat greater needs than the younger and had the benefit of her father's financial assistance for a longer time."

- 8 -

Although the State urged the trial court to follow the Tennessee child support guidelines in setting the amount of child maintenance restitution, the trial court rejected this request. As correctly stated by the trial court, "the child support algorithm is not authorized by [Tennessee Code Annotated section 39-13-219]." In interpreting statutes, the judiciary's foremost consideration is to give effect to the General Assembly's legislative intent without either restricting or expanding the statute beyond its intended scope. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995). In doing so, we presume that the General Assembly "knows the law and makes new laws accordingly." *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013). The principle of statutory interpretation *expressio unius est exclusio alterius*, or "the expression of one thing implies the exclusion of others," is helpful in this analysis. *Richards v. Vanderbilt Univ. Med. Ctr.*, 706 S.W.3d 319, 324 (Tenn. 2025). The General Assembly's omission of reference to the child support guidelines in Tennessee Code Annotated section 39-13-219's provisions for child maintenance restitution indicates its intent to refrain from adopting such a mechanism in this context. Thus, the record establishes that the trial court applied the correct legal standard.

The Defendant's claim that the State failed to present any proof regarding the financial needs of the children, the standard of living the children were accustomed to, or the physical, emotional, and educational needs of the children is belied by the record. The affidavit of Mrs. Stewart, submitted under seal by the State, explained the physical and custody arrangement of the children, the age of the children, the date their classes would graduate from high school, the amount of social security benefits the children were receiving, the total family income, the amount of lost income from the death of the victim, the surviving parent's income, expenses for child care, expenses for extracurricular activities such as sports and camps, life insurance proceeds, money spent on debt, accumulated savings, and proceeds from a wrongful death civil suit. A portion of the civil suit funds was paid to the victim's adult children. The portion allotted to the minor children will be paid to the children when they reach majority. As the trial court noted in its order, Mrs. Stewart only received a little over $21,800 from the civil settlement. Mrs. Stewart also testified briefly during the sentencing hearing about the emotional toll the victim's death had on their children. Both children submitted written statements expressing their sadness over the loss of their father.[2]

The victim impact statement submitted by Mrs. Stewart as part of the Tennessee Department of Correction presentence report indicates that both children were receiving ongoing counseling due to the death of their father, that the family owed medical bills from the wreck, and that the financial impact of losing the victim was significant. Based upon

---

[2] The victim's two adult children also submitted letters to the trial court prior to sentencing. However, they are ineligible to receive child maintenance restitution under the statute due to their age.

Mrs. Stewart's affidavit, the victim provided almost seventy-five percent of the household income. Mrs. Stewart was made a widow at age thirty-five, facing raising two children under ten years of age without the benefit of any non-working family members in the area to provide assistance. Additionally, multiple letters from other family members and friends were submitted to the trial court, demonstrating the active role the victim had in the lives of his children. This was sufficient information for the trial court to consider each factor listed in the statute.

The Defendant also argues that the State failed to present any proof that the children were in need of additional support and maintenance. However, as the trial court stated, child maintenance restitution is mandatory in this case. Tenn. Code Ann. § 39-13-219(a) (providing that "if a defendant is convicted of a violation of [Tennessee Code Annotated section] 39-13-213(a)(2) . . . and the deceased victim of the offense was the parent of a minor child, then the sentencing court *shall* order the defendant to pay restitution in the form of child maintenance[.]" (emphasis added)). Although the trial court must consider the children's financial needs and resources, the statute contains no language indicating that restitution should not be ordered if the children have some minimum level of support. Such an interpretation would be contrary to the statute's requirement that the trial court consider the standard of living to which the child is accustomed.

Finally, the Defendant argues that the trial court failed to consider the Defendant's reasonable ability to pay, citing *Cavin*, 671 S.W.3d at 529. However, his reliance on *Cavin* for this proposition is misplaced. *Cavin* examined the general restitution statute in effect in 2020, which stated, in relevant part, "In determining the amount and method of payment or other restitution, the court shall consider the financial resources and future ability of the defendant to pay or perform." Tenn. Code Ann. § 40-35-304(d) (2019) (subsequently amended).[3] However, there is no such provision in the child maintenance restitution statute. Had the General Assembly intended for the trial court to consider a defendant's ability to pay, it could have included a provision similar to that found in section 40-35-304(d). It did not do so. Nonetheless, the trial court stated in its order that the Defendant "has the ability to earn substantial income . . . and has a minor child[.]" The Defendant's argument is unavailing.

The trial court examined the factors outlined in the statute and made individualized findings as to the appropriate amount of restitution for each child until that child's eighteenth birthday or the month of that child's high school class's graduation, whichever is later. The trial court also considered the funds from the wrongful death civil judgment

---

[3] We note that the general restitution statute in effect at the time of this offense stated that the trial court "*may* consider the financial resources and future ability of the defendant to pay or perform." Tenn. Code Ann. § 40-35-304(d) (2021) (emphasis added).

- 10 -

when determining the amount of restitution. Although, as stated above, the child support guidelines were not adopted by the General Assembly when it passed the child maintenance restitution statute, we note that the amount awarded by the trial court was considerably less than the child support guidelines would provide for the children from their father's income, as requested by the State. Under the facts of this case, we find that the trial court did not abuse its discretion in setting the amount of child maintenance restitution.

## B. LENGTH OF SENTENCE

Finally, the Defendant argues that the trial court erred by ordering a sentence above the minimum of eight years. *See* Tenn. Code Ann. § 40-35-112(a)(2) (providing that a Range I sentence for Class B felony is eight to twelve years). The basis of his argument on appeal is that enhancement factor (6), that the personal injuries inflicted upon, or the amount of damage to property sustained or taken from, the victim was particularly great, does not apply under the facts of this case because it is an essential element of vehicular homicide. *See* Tenn. Code Ann. § 40-35-114(6). The State argues that even if enhancement factor (6) does not apply, the trial court did not abuse its discretion because two other enhancement factors did apply and are not challenged by the Defendant.

As outlined above, we review a trial court's sentencing determinations for abuse of discretion. *Bise*, 380 S.W.3d at 707. Additionally, where the trial court imposes a within-range sentence, "and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles" of the Sentencing Act, we afford its sentencing determinations a presumption of reasonableness. *Id*. Included among the purposes and principles of the Sentencing Act is the balancing consideration that "the sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," while also acting as an effective deterrent to future violations of the law. *See* Tenn. Code Ann. §§ 40-35-102(3)(A), 40-35-103(4).

The trial court's misapplication of an enhancement or mitigating factor does not serve to invalidate a defendant's sentence. *Bise*, 380 S.W.3d at 707. So long as it appears from the record that the trial court imposed a within-range sentence which complies with the purposes and principles of the Sentencing Act, we will afford its decision a presumption of reasonableness and will not invalidate it notwithstanding its erroneous application of an enhancement or mitigating factor. *Id*.; *see also State v. Fusco*, 404 S.W.3d 504, 548 (Tenn. Crim. App. 2012). Additionally, the trial court's weighing of the applicable enhancement and mitigating factors is discretionary, and a defendant's disagreement with that discretionary determination is not a valid ground for appeal. *Bise*, 380 S.W.3d at 706; *see also State v. Earley*, 719 S.W.3d 228, 253 (Tenn. Crim. App. 2025).

We agree with the Defendant that the trial court misapplied enhancement factor (6). Vehicular homicide by intoxication necessarily includes the element that the victim was killed. The trial court found that the injuries to the victim were particularly great. The trial court did not base its findings on the damage to the victim's property. Because the offense of vehicular homicide involves great bodily injury to the victim, the trial court erred in applying enhancement factor (6) based upon personal injuries to the victim. *See State v. Rollins*, No. E2022-00890-CCA-R3-CD, 2023 WL 4078700, at \*5 (Tenn. Crim. App. June 20, 2023), *perm. app. denied* (Tenn. Oct. 13, 2023); *see also State v. Sweet*, No. E2008-00100-CCA-R3-CD, 2009 WL 2167785 at \*15 (Tenn. Crim. App. July 21, 2009), *no perm. app. filed*.

However, the Defendant does not challenge on appeal the application of enhancement factors (1) or (10), nor does he claim that the trial court failed to properly consider the purposes and principles of the Sentencing Act. The sentence imposed by the trial court fell within the statutory range for the Class B felony for which the Defendant was convicted. The record establishes that the trial court did, in fact, properly consider the purposes and principles of the Sentencing Act. Therefore, the sentence is presumed reasonable. As stated in *Bise*, "a trial court's misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from its sentencing decision." *Bise*, 380 S.W.3d at 709. The trial court did not abuse its discretion in sentencing the Defendant to a ten-year period of incarceration.

## III. CONCLUSION

Following our review and based on the foregoing analysis, we find that the trial court did not abuse its discretion in setting the amount of child maintenance restitution or in sentencing the Defendant to a ten-year term of confinement. We affirm the judgment of the trial court.

s/ *STEVEN W. SWORD*

STEVEN W. SWORD, JUDGE

- 12 -